Kenneth KREBS, Petitioner-Appellant,

v.

David H. SCHWARZ, Administrator, Division of Hearings and Appeals, Respondent-Respondent.

Court of Appeals

*No. 96–2596. Submitted on briefs May 9, 1997.—Decided June 11, 1997.*

(Also reported in 568 N.W.2d 26.)

On behalf of the petitioner-appellant, the cause was submitted on the brief of *Terry W. Rose* of *Rose & Rose* of Kenosha.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *Pamela Magee*, assistant attorney general.

Before Brown, Nettesheim and Anderson, JJ.

ANDERSON, J.   Kenneth Krebs appeals from the trial court's order denying his petition for writ of certiorari. Krebs seeks review of the Division of Hearings and Appeals' (division) determination revoking his probation. He argues that the condition of probation requiring him to discuss and receive approval from his probation agent before he engaged in an intimate rela-

tionship with an adult female was unconstitutional. He further contends that the division's findings that he was offered further treatment and placed in a halfway house on two occasions and that he traveled to and spent the night in Illinois without a valid permit were erroneous. We conclude that the intimate contact condition is both reasonable and related to Krebs' rehabilitation. We further conclude that the division's findings are supported by the evidence. We affirm the revocation.

On March 22, 1993, Krebs was convicted of first-degree sexual assault of his daughter. He received a twenty-year imposed and stayed prison term and was instead placed on probation for twenty years, with a variety of conditions. Krebs signed and agreed to follow all court-ordered conditions of probation as well as the probation rules outlined by his agent.[1]

Throughout his probation term, Krebs was cited for various violations of the conditions of his probation.

---

[1] The rules included the following conditions which are relevant to our analysis:

3. You shall make every effort to accept the opportunities and counseling offered by supervision. You shall enter into, attend all appointments at, and successfully complete any counseling/treatment ordered by your agent.

4. You shall inform your agent of your whereabouts and activities as he/she directs.

. . . .

6. You shall make yourself available for searches or tests . . . or search of your residence or any property under your control.

7. . . . You must spend every night at your approved residence, unless you have received approval in advance from your agent to stay elsewhere.

8. You shall not leave the State of Wisconsin unless you get approval and a travel permit in advance from your agent.

. . . .

From October 19 through December 5, 1995, Krebs was in custody to allow further investigation of those alleged violations. On December 5, 1995, Krebs signed an alternative to revocation agreement wherein he admitted to violating the following conditions of his probation: "I did become involved in a sexual relationship without first discussing it with my agent and obtaining my agent's approval, I did consume alcohol, provide false information to my agent and went to IL w/out a travel permit and spent the night, elsewhere other than my approved residence." Also as part of the agreement, Krebs was required to complete the Thurgood Marshall Alcohol and Drug Treatment Program. He was warned that any further violations would result in revocation. On January 12, 1996, Krebs was unsuccessfully discharged from the program due to his negative and disruptive behavior.

Thereafter, Krebs was served with a notice of violation of his probation and was also notified that the Department of Corrections was recommending revocation of his probation. The notice cited five violations of his rules of probation, all of which Krebs admitted to in the alternative revocation agreement. After a revocation hearing, the division revoked his probation. The hearing examiner's decision was sustained by the administrator of the Division of Hearings and Appeals. Krebs then filed a petition for writ of certiorari for review of the division's final decision. The circuit court denied the writ. Krebs appeals.

■

Krebs' first contention is that the condition requiring him to discuss and obtain permission from his

15.D). You shall not enter into any dating, intimate, or sexual relationship with any person without first discussing this with your agent and obtaining your agent's approval.

probation agent, Brenda Jaeggi, prior to engaging in a sexual relationship is unreasonable, overbroad and interferes with his constitutional right to privacy. Conditions of probation may impinge upon constitutional rights as long as they are not overly broad and are reasonably related to the person's rehabilitation. *See Von Arx v. Schwarz*, 185 Wis. 2d 645, 658, 517 N.W.2d 540, 545 (Ct. App. 1994). Our review of the particular condition, then, examines both its reasonableness and its breadth. *See id.* at 659, 517 N.W.2d at 546.

The condition prohibiting Krebs from entering into an intimate or sexual relationship with any person without first discussing it with and obtaining his agent's approval is both reasonable and is not overly broad. First, the condition does not prohibit Krebs' right to procreate as he claims. Rather, he is free to maintain platonic relationships with individuals; it is only when the relationship turns intimate and/or to sexual gratification that Krebs needs to seek permission from his probation officer. Although this may be a constriction of a constitutional right, it is not a denial of it. We conclude that the condition is not overly broad; rather, it is no more than an inconvenience. *See State v. Miller*, 175 Wis. 2d 204, 212, 499 N.W.2d 215, 218 (Ct. App. 1993).

Moreover, the condition is rationally related to Krebs' rehabilitation because it forces him to be honest with others by confronting and admitting to his sexually deviant behavior. Admission of sexually deviant behavior is necessary to help prevent relapse. *See, e.g., State v. Carrizales*, 191 Wis. 2d 85, 95, 528 N.W.2d 29, 32 (Ct. App. 1995) (counselors view admission as a first step toward rehabilitation); *see also Von Arx*, 185 Wis. 2d at 660, 517 N.W.2d at 546 (sex offender treatment

programs are directly related to rehabilitation from engaging in deviant sex acts with children, as well as preventing the perpetrator from re-offending).

Finally, the condition serves to protect the public. Jaeggi testified that the reason for the rule is that it gives the agent the opportunity to talk to the probationer's potential partner and then he or she can make an informed decision about who they are becoming involved with. The public is protected because the agent can substantiate that the person is an adult. It also places a potential partner who may have children or grandchildren on alert that the probationer is a sex offender. In this case, Jaeggi also informed Georgia C., who Krebs had a sexual relationship with, of his past incidents of domestic violence of which she was previously unaware. Although Jaeggi did not mention it, we believe this condition also allows the agent to verify that the potential partner has his or her full mental faculties and protects those who are so mentally challenged that he or she cannot give informed consent to sexual relations or are subject to manipulation by the probationer because of his or her disability. Because the condition is narrowly drawn and is reasonably related to Krebs' rehabilitation, as well as the protection of the public, we conclude it does not violate Krebs' constitutional right to privacy.

Krebs next contends that the evidence does not support the division's revocation decision in two specific instances. Our standard of review of a revocation decision is whether the division acted arbitrarily and capriciously. *See Von Arx*, 185 Wis. 2d at 655–56, 517 N.W.2d at 544. As long as the division acted upon a rational basis and the action represented its judgment and not its will, it will not be deemed to have acted

arbitrarily and capriciously. *See id.* at 656, 517 N.W.2d at 544. We must affirm the division's decision if there is substantial evidence to support it. *See id.*

Krebs' first argument seems to be the following: he was offered the Thurgood Marshall house as a condition of probation from which he was subsequently discharged; Thurgood Marshall recommended that Krebs be referred to a more appropriate alcohol and drug addiction program; and the interventions program, which he was willing to pay for, was available. He continues, "It is obvious, therefore, that there was not substantial evidence to support" the hearing examiner's statement "that [Krebs] was offered further treatment and was offered placement into a halfway house on two occasions." This argument is without merit.

The record reveals that Krebs has taken this statement from the hearing examiner's decision wholly out of context. The hearing examiner's comment was made during a recitation of the historical facts of this case. The hearing examiner summarized:

> [Krebs], was convicted on January 22, 1993, of Sexual Assault of a Child. . . .
>
> . . . .
>
> On January 26, 1994, [Krebs] was released from the Kenosha County Jail after he finished serving one year in custody required as a condition of probation. . . .
>
> . . . .
>
> During the client's probation term he was involved in community based treatment. He has been involved in sex offender treatment groups. He has been involved in individual counseling for a long period of time. He has attended AA and alcohol and

133

drug education groups. The client had been offered further treatment and was offered placement into a halfway house on two occasions. He declined these opportunities. . . .

. . . .

In December, 1995 [Krebs] signed an alternative to revocation agreement admitting violations of his supervision. As a result . . . [Krebs] was placed into the Thurgood Marshall Halfway House as an alternative to revocation. . . . [H]e was unsuccessfully discharged from the program on January 12, 1996, in violation of his rules of probation. . . .

These findings are substantiated by Jaeggi's revocation summary and testimony. In January 1994, Krebs was offered a referral to the Columbus Halfway House, which he refused. In early January 1995, Krebs was again offered a placement at Columbus Halfway House "so that he would have the structure and the support to get himself together, but he stated that he did not wish to be placed at Columbus House." Obviously, the hearing examiner's statement that Krebs was "offered further treatment and placement into a halfway house on two occasions" refers to the offered placement at Columbus Halfway House. The record supports this finding.

Furthermore, it is absurd for Krebs to presuppose that he can select which treatment program *he* is willing to attend and pay for. First, the rules, which he agreed to, do not provide for such a scenario. Rule 3 specifically states: "You shall make every effort to accept the opportunities and counseling *offered by supervision.* You shall enter . . . and successfully complete any counseling/treatment *ordered by your agent.*" (Emphasis added.) Moreover, "[t]he liberty enjoyed by a probationer is, under any view, a conditional liberty.

It is conditioned on adhering to the conditions of proba- tion as set forth in the probation agreement. His position is not that of the nonconvicted citizen. Whether sentence is withheld or imposed and stayed, a convicted person's status as a probationer 'is a matter of grace or privilege and not a right' made possible by the legislature." *Stave v. Evans*, 77 Wis. 2d 225, 230, 252 N.W.2d 664, 666 (1977) (quoted source omitted) (citation omitted). And the "[c]ontrol over the care of prisoners is vested by statute in the [DHSS, now the DOC]," not the prisoner. *State v. Lynch*, 105 Wis. 2d 164, 168, 312 N.W.2d 871, 874 (Ct. App. 1981).

Krebs next maintains that the evidence does not prove that he traveled to Illinois without a valid permit or spent the night in Illinois. He makes this argument conceding that he was never given permission to stay overnight in Illinois, but he contends that because he left after midnight and returned the next day before midnight, he was not in Illinois for two consecutive calendar days in violation of the overnight provision.

The evidence in support of the division's decision is overwhelming. We first note that Krebs admitted to these very same violations in his probation statements and the alternative revocation agreement that he signed in December 1995. In order to avoid revocation, Krebs admitted the violations, accepted a referral to the Thurgood Marshall House and agreed to complete that treatment program. Because Krebs failed to com- plete the program, he was subject to revocation again. The incriminating statements may be used against him in the revocation proceedings to prove the viola- tions. *See Carrizales*, 191 Wis. 2d at 95, 528 N.W.2d at 32.

However, Jaeggi, who represented the DOC, presented more than just the alternative to revocation

agreement. To counter Krebs' claim that he never traveled to Illinois without a travel permit, Jaeggi submitted several letters she confiscated from Krebs' home which were written by Georgia to Krebs. One such letter, dated Sunday March 26, 1995, commented: "Well, the dishes from our Saturday together are done. The tabletop has been cleared . . . and there's no physical trace that you were even here for 24 hours." Krebs' probation agent checked Krebs' travel permits and none were issued for either March 24 or 25, 1995. The evidence supports the ALJ's finding that Krebs traveled without a permit in violation of his rules of probation.

Krebs' contention that he did not spend the night in Illinois because he never stayed in Illinois for more than twenty-four hours is equally far-fetched. Krebs' rules of probation specifically prohibited Krebs from "chang[ing] residence or employment unless you get approval in advance from your agent. You must *spend every night* at your approved residence, unless you have received approval in advance from your agent to stay elsewhere." Jaeggi testified that she asked Krebs "every time if he was planning to stay overnight and he would tell me no, that it was just basically a day trip. . . . He knows that he can't spend the night anywhere other than his approved residence." Jaeggi never issued Krebs travel permits for overnight.

Yet, in several of Georgia's letters, she refers to their "nights" together, such as, "I enjoyed having you in bed with me, and I do feel you'll sleep better this Saturday night . . . I'm looking forward to our time together 'round midnight' on Sat. Sunday" and, "What I'd really like to do is come to K-town right after work on Friday night . . . and then whisk you and me over the state line 'round midnight.' If we do that, we can wake

136

up in each other's arms on Saturday morning. That sounds like a wonderful way to start the day . . . as the sun rises, but also because it would give us the chance to 'sleep in' if we want to." In the letters, Georgia also mentioned washing Krebs' pajamas after he "spent all night in them on Saturday." The evidence not only supports the ALJ's finding, but also demonstrates the absurdity in Krebs' argument.

Given a common sense reading, the condition—"you must spend every night at your approved residence"—sufficiently informs Krebs how he shall conform his conduct. Although the permit does not delineate the specific hours acceptable for travel, it does state "not valid for overnight."[2] According to BLACK'S LAW DICTIONARY 1044 (6th ed. 1990) (citing MODEL PENAL CODE § 221.0(2)), " 'nighttime' begins thirty minutes after sunset and ends thirty minutes before sunrise." This is a reasonable and somewhat universal understanding of nighttime. It follows then, that Krebs' daytime travel permit allowed him to be gone from approximately thirty minutes before sunrise until thirty minutes after sunset. Travel at any other time requires advance approval from the probation agent. Spending nighttime hours and keeping pajamas at someone else's home is directly contrary to the intent and purpose of a travel permit which was not valid for overnight stays.

The purpose of probationary supervision is to "control and . . . guide offenders into socially appropriate

---

[2] We would recommend that in the future the Department of Corrections be more specific and give travel passes for a specific time period. Another alternative would be to require that the probationer spend so many consecutive hours in his or her residence per day. This also may discourage future inventiveness from probationers.

ways of living." *See* Wis. ADM. CODE § DOC 328.04(1). The agent's responsibilities include "[m]onitoring the client's compliance with the conditions and rules of supervision to insure appropriate control of the client and the protection of the public." *See* § DOC 328.04(2)(k). Essentially, the probationer is to be available to the agent at anytime. According to the rules, the probationer is subject to tests, or searches of the probationer or the probationer's residence and property. In addition, the probationer is to report to the agent for any scheduled or unscheduled appointments. Spending every night at the probationer's approved residence unless otherwise approved, conforms with the purpose of probationary supervision. Krebs was out overnight in direct contravention of the rules and purpose of probation.

*By the Court.*—Order affirmed.