STATE of Wisconsin, Plaintiff-Respondent,

v.

Cheryl A. KOENIG, Defendant-Appellant.

Court of Appeals

*No. 02–1076–CR. Submitted on briefs November 7, 2002.—*
*Decided December 18, 2002.*

2003 WI App 12

(Also reported in 656 N.W.2d 499.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick Flanagan*, of *Flanagan Law Office, L.L.C.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Lara M. Herman*, assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. NETTESHEIM, P.J. Cheryl A. Koenig appeals from an order denying her motion to rescind a condition of her extended supervision that requires her to introduce any person she is "dating" to her supervising agent. Koenig argues that the ambiguity of the term

"dating" renders the condition unconstitutionally vague. We disagree. We conclude that the statutory definition of "dating relationship" as set out in WIS. STAT. § 813.12(1)(ag)[1] provides an objective standard for enforcement and further provides Koenig with adequate notice of when she must introduce someone to her agent. We therefore affirm the trial court's order.

### FACTS

¶ 2. On November 14, 2000, Koenig was charged with two counts of forgery in violation of WIS. STAT. § 943.38(1). The complaint alleged that Koenig had taken two checks from Randy Hill, a man with whom she had lived from July 2000 until September 2000. Without Hill's permission, Koenig wrote out and signed Hill's name to the checks made payable to herself in the amount of $100 each. Hill discovered the forged checks on his bank statement after Koenig had cashed them.

¶ 3. On May 15, 2001, Koenig pled guilty to forgery. The trial court withheld sentencing and placed Koenig on three years of probation.[2] Koenig's probation was revoked on October 12, 2001. In the report supporting revocation, Koenig's agent alleged that Koenig had stolen and forged personal checks from her former boyfriend, Bruce Krueger, and her current boyfriend, Brian White. On November 16, 2001, the trial court sentenced Koenig to eighteen months' imprisonment followed by twenty-four months of extended supervision.

---

[1] WISCONSIN STAT. § 813.12(1)(ag) was created by 2001 Wis. Act 109, Part B, § 519mf. All other statutory references are to the 1999–2000 version unless otherwise indicated.

[2] On May 17, 2000, Koenig was placed on twelve months of probation for theft charges in Sheboygan county.

¶ 4. The judgment lists the conditions of extended supervision, including the condition that Koenig "introduce to her agent, immediately, any person she is dating to discuss her prior record." The trial court determined the condition to be appropriate "to protect the public from future crimes that Ms. Koenig may be inclined to commit." As to the issue of when Koenig would be considered to be "dating," the trial court stated, "I believe under the circumstances, that [the condition] could be construed in a way that would give her sufficient notice that if she is socially seeing someone that she would have to introduce that person to her agent so it would be assured that they would know . . . what she has done in the past in regard to stealing checks and forging those checks."

¶ 5. On February 11, 2002, Koenig filed a postconviction motion to rescind the condition of extended supervision requiring her to introduce anyone she is "dating" to her agent. Koenig challenged the condition on grounds that it is unconstitutionally vague. The trial court denied Koenig's motion in a written decision dated April 4, 2002. The trial court observed that Koenig "has habitually stolen checks from men with whom she has lived or dated. She has then forged the boyfriend's signature and cashed the check." The trial court concluded that "[t]he condition of probation puts Ms. Koenig on notice that if she begins dating, seeing someone socially of the opposite sex, she must immediately introduce that person to her supervising agent."

¶ 6. Koenig appeals.

## DISCUSSION

¶ 7. On appeal, Koenig renews her constitutional challenge to the condition of extended supervision.

WISCONSIN STAT. § 973.01(5) authorizes the trial court to impose conditions upon a term of extended supervision. It is within the broad discretion of the trial court to impose conditions as long as the conditions are reasonable and appropriate. *State v. Carrizales*, 191 Wis. 2d 85, 93, 528 N.W.2d 29 (Ct. App. 1995).[3] While rehabilitation is the goal of probation, judges must also concern themselves with the imperative of protecting society and potential victims. *State v. Oakley*, 2001 WI 103, ¶ 12, 245 Wis. 2d 447, 629 N.W.2d 200. "[W]hen a judge allows a convicted individual to escape a prison sentence and enjoy the relative freedom of probation, he or she must take reasonable judicial measures to protect society and potential victims from future wrongdoing. To that end—along with the goal of rehabilitation—the legislature has seen fit to grant circuit court judges broad discretion in setting the terms of probation." *Id.*

¶ 8. Here, Koenig does not argue that the condition of extended supervision is unreasonable or does not serve the proper objectives.[4] Rather, Koenig argues that

---

[3] We recognize that the court in *State v. Carrizales*, 191 Wis. 2d 85, 528 N.W.2d 29 (Ct. App. 1995), was discussing conditions of probation. For purposes of review, we conclude that authority relating to the propriety of conditions of probation is applicable to conditions of extended supervision. We note that the Wisconsin legislature recently enacted an amendment to WIS. STAT. § 302.113 that will modify the right of those on extended supervision and the department to seek judicial review of conditions of extended supervision set by the court. 2001 Wis. Act 109, Part B, § 395. The amendment is effective as of February 1, 2003. 2001 Wis. Act 109, Part C, § 9459.

[4] We note that any challenge to the reasonableness or breadth of the condition would likely be rejected in the face of our decision in *Krebs v. Schwarz*, 212 Wis. 2d 127, 568 N.W.2d 26 (Ct. App. 1997). There, the defendant challenged a condition of probation on grounds of reasonableness and constitutional

837

the condition of extended supervision, which requires her to introduce any individual she is dating to her supervising agent, is unconstitutionally vague.

¶ 9. We conclude that our decision in *State v. Lo*, 228 Wis. 2d 531, 599 N.W.2d 659 (Ct. App. 1999), controls this issue. The appropriate standard for our review of a vagueness challenge to a condition of extended supervision was set forth in *Lo*:

> A probation condition is subject to a vagueness challenge in that it must be sufficiently precise for the probationer to know what conduct is required of him or her. The standards applicable to vagueness challenges to statutes are instructive on the question. The underlying basis for such a challenge is the procedural due process requirement of fair notice. A statute is unconstitutionally vague if it either fails to afford proper notice of the prohibited conduct or fails to provide an objective standard for enforcement. "In order to give proper notice, a criminal statute must sufficiently warn people who wish to obey the law that their conduct comes near the proscribed area." We will not declare a statute to be unconstitutional on vagueness grounds "if any reasonable and practical construction can be given its language or if its terms may be made reasonably

overbreadth. *Id.* at 131. The condition of probation prohibited him from entering into a "dating, intimate, or sexual relationship" with any person without first discussing it with and obtaining his agent's approval. *Id.* at 130 n.1. We concluded that the condition, while inconvenient, was both reasonable and not overly broad. We reasoned that the defendant was free to maintain platonic relationships with individuals and was only required to seek permission when a relationship turned intimate and/or for sexual gratification. *Id.* at 131.

certain by reference to other definable sources." We have held, however, that a statute is vague if a trier of fact is forced to create and apply its own standards of culpability, rather than apply the standards prescribed in the statute.

*Id.* at 535–36 (citations omitted).

¶ 10. The defendant in *Lo* challenged as unconstitutionally vague and overbroad the trial court's imposition of a probation condition prohibiting him from having contact with "gang members." *Id.* at 534. Lo argued that it was not clear from the terms of probation who was or was not a gang member for purposes of complying with the condition of probation. *Id.* at 535. The parties in *Lo* agreed that the statutes provided a definition of both "criminal gang," WIS. STAT. § 939.22(9), and "criminal gang activity," WIS. STAT. § 941.38(1)(b). *Lo*, 228 Wis. 2d at 536.[5] However, Lo

---

[5] The following statutory definitions were considered in *State v. Lo*, 228 Wis. 2d 531, 536–37, 599 N.W.2d 659 (Ct. App. 1999). WISCONSIN STAT. § 939.22(9) defines a "criminal gang" as

an ongoing organization, association or group of 3 or more persons, whether formal or informal, that has as one of its primary activities the commission of one or more of the criminal acts, or acts that would be criminal if the actor were an adult, specified in s. 939.22(21)(a) to (s); that has a common name or a common identifying sign or symbol; and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.

WISCONSIN STAT. § 941.38(1)(b) defines "criminal gang activity" as

the commission of, attempt to commit or solicitation to commit one or more of the following crimes, or acts that would be crimes if the actor were an adult, committed for the benefit of, at the direction of or in association with any criminal gang, with the specific intent to promote, further or assist in any criminal conduct by criminal gang members.

argued that the statutes did not give adequate notice as to how he must conduct himself to meet the terms of the condition. *Id.*

¶ 11. Relying on the language of the statutes and a "commonsense reading of the condition," we rejected Lo's vagueness and overbreadth challenges. *Id.* at 536–37. We concluded that the statutes were sufficiently specific so that when coupled with the probation condition, Lo had adequate notice of the expected conduct and an ascertainable standard for enforcement. *Id.* We further concluded that a reasonable interpretation of the condition itself was that it requires Lo not to have contact with individuals whom he knows, or reasonably should know, are members of a gang. *Id.* at 539.

■

¶ 12. Here, Koenig represents that there is no statutory definition of "dating." However, the State points us to a recently enacted definition of "dating relationship" provided in Wɪs. Stᴀᴛ. § 813.12(1)(ag), as created by 2001 Wis. Act 109, Part B, § 519mf. That definition, pertaining to domestic restraining orders and injunctions, provides:

> "Dating relationship" means a romantic or intimate social relationship between 2 adult individuals but "dating relationship" does not include a casual relationship or an ordinary fraternization between 2 individuals in a business or social context. A court shall determine if a dating relationship existed by considering the

length of the relationship, the type of the relationship, and the frequency of the interaction between the adult individuals involved in the relationship.

Sec. 813.12(1)(ag).[6]

¶ 13. Like Lo, Koenig argues that the statutory definition of "dating relationship" does not provide adequate guidance as to how to comply with the condition of extended supervision. Koenig contends that it is unclear what makes a relationship "romantic." While the statute does not define "romantic," we conclude that this does not render the condition unconstitutionally vague.

¶ 14. Based on the language of WIS. STAT. § 813.12(1)(ag), Koenig has fair and adequate notice that she must introduce to her agent any person with whom she is involved in an intimate social relationship. Not only does the statute differentiate between a "romantic or intimate social relationship" and "a casual relationship or an ordinary fraternization," but common sense would also lead one to arrive at that distinction. Therefore, when Koenig is involved in something more than a platonic relationship with someone of the opposite sex, she must introduce that person to her agent.

¶ 15. In addition, that statute provides an ascertainable standard for enforcement by clearly excluding from the definition of dating those relationships that are platonic or casual and ordinary fraternization.

---

[6] Although this provision became effective on July 30, 2002, *see* 2001 Wis. Act 109, Part C, WIS. STAT. § 9309(2zz), after Koenig's sentencing on November 16, 2001, it will nevertheless provide guidance to Koenig when she is released from prison and placed on extended supervision.

## CONCLUSION

¶ 16. *Lo* instructs that when a statutory definition is available which provides a defendant with sufficient notice as to the expected course of conduct and an ascertainable standard for enforcement, the condition is not unconstitutionally vague. *Lo*, 228 Wis. 2d at 536–37. Because such a definition is available in this case, we reject Koenig's challenge to the condition of her extended supervision.

*By the Court.*—Order affirmed.