*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 13, 2021

Plaintiff-Appellee,

v

No. 350987
Oakland Circuit Court
LC No. 2018-267850-FH

DAVID DEAN RUSSEL BALDWIN,

Defendant-Appellant.

Before: K. F. KELLY, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of five counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(d) (incest). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 15 years and 10 months to 60 years' imprisonment for each CSC-III conviction. Defendant argues on appeal that (1) his right to due process was violated when the trial court empaneled an anonymous jury by referring to the jurors by number rather than by name, and (2) 50 points were improperly assessed for Offense Variable (OV) 11 because there was no evidence presented that there was more than one penetration "arising from" the sentencing offense. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of defendant's repeated sexual assault of his daughter, JE, between November 2017 and May 2018. The first incident occurred in November 2017. JE was in the car with defendant and telling defendant about how she missed her ex-girlfriend. JE stated that she "would do anything to talk to" her ex-girlfriend. Defendant responded by asking JE if "anything" included "letting me stick my fingers in you." JE said "yes." Defendant parked his car in the back corner of a high school parking lot and put his finger into JE's vagina. In exchange for inserting his finger into JE's vagina, JE was allowed to call her ex-girlfriend. JE explained that each sexual penetration occurred "in trade" for permission to do various things that she wanted to do, such as seeing friends. JE testified that, in total, defendant penetrated her vagina with his fingers "six, seven, eight, nine times."

The penetrations advanced to oral sex. The first time that JE performed oral sex on defendant it occurred in the kitchen of the family home. Thereafter, JE performed oral sex on defendant "a handful plus" amount of times. At some point between December 2017 and March 2018, defendant suggested that the sexual acts advance to him vaginally penetrating JE. Defendant had JE lie naked on the edge of the bed that he shared with his wife and attempted to insert his penis into JE's vagina. Although defendant penetrated JE's labial lips, he was unsuccessful in penetrating her vagina. Defendant then went into the master bathroom, retrieved his wife's pink vibrating dildo, and vaginally penetrated JE with it. After this incident, defendant did not attempt to have vaginal sex with JE again, but penetrated her with a dildo one other time. And, on two separate occasions, defendant performed oral sex on JE. The final incident occurred in the beginning of May 2018, when defendant digitally penetrated JE's vagina.

JE ultimately disclosed what was happening to two school friends. JE's friends told Jennifer Stone and Michael Brennan, the high school's counselors, about the sexual acts occurring between defendant and JE. After initially denying that any sexual acts occurred, JE ultimately informed Stone of what was happening. JE made a police report to Oakland County Sherriff's Sergeant Rich Hubble. Sergeant Hubble obtained a search warrant for the family home and located multiple dildos in the home. Sergeant Hubble sent the dildos and two buccal swabs from JE to the Oakland County Sherriff's Office Forensic Laboratory for DNA testing. The DNA discovered on one of the dildos was "at least 78.3 trillion times more likely" to be JE's DNA than the DNA of another person.

After the jury convicted defendant as charged, this appeal followed.

## II. ANONYMOUS JURY

Defendant argues that his right to due process was violated when the trial court empaneled an anonymous jury by referring to the jurors by number rather than by name. We disagree.

To preserve a challenge to the trial court's practice of referring to the jurors by number rather than by name, the defendant must object to the practice in the trial court. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). Defendant did not object to the trial court referring to the jurors by number rather than by name in the trial court. Therefore, this issue is unpreserved. *Id*.

This Court reviews unpreserved issues for plain error. *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Even if all three requirements are met, reversal is only warranted when the plain error resulted in an innocent defendant's conviction, or it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Moorer*, 262 Mich App 64, 68; 683 NW2d 736 (2004).

An "anonymous jury" is " 'one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public.' " *Hanks*, 276 Mich App at 93, quoting *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). The use of an anonymous jury runs the risk of undermining the parties' ability to conduct a meaningful examination of the jury and the defendant's interest in maintaining the presumption of innocence. *Id*. at 522-523. "In order to successfully challenge the use of an 'anonymous jury,' the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Id*. at 523. A due process challenge to an anonymous jury will only succeed when "something more than just the jurors' names is withheld from the parties." *Hanks*, 276 Mich App at 93. This Court has explained that an anonymous jury is not empaneled when the jurors are simply referred to by number rather than by name. *Id*.; *Williams*, 241 Mich App at 523.

In *Williams*, the defendant argued that the trial court violated his due-process rights by empaneling an anonymous jury by referring to the jurors by number rather than by name. *Id*. at 522. This Court concluded the defendant's due-process rights were not violated when the jurors were referred to by number rather than by name because no evidence was presented that any information regarding the jurors was withheld from the parties, compromised the defendant's ability to effectively examine the jurors, or undermined the presumption of innocence. *Id*. at 523-524. This Court emphasized that a key factor of an anonymous jury is that "certain biographical information about potential jurors is withheld" from the parties. *Id*. at 523 (quotation marks and citation omitted).

Similarly, in *Hanks*, the defendant argued that the trial court's policy of referring to jurors by number rather than by name violated his due-process rights and entitled him to a new trial. *Hanks*, 276 Mich App at 92. This Court concluded that the parties' ability to conduct a meaningful voir dire was not undermined by the practice because the record reflected that the juror questionnaires containing the jurors' biographical information were provided to the parties and the parties conducted extensive voir dire. *Id*. at 94. This Court also concluded that there was nothing in the record to support the conclusion that the defendant's presumption of innocence was undermined simply because the jurors were not referred to by name. *Id*. Accordingly, this Court concluded that the jury was anonymous "only in a literal sense, so none of the dangers of an 'anonymous jury' was implicated." *Id*.

In this case, the record reflects that the jurors were identified by number rather than by name. But nothing in the record supports the conclusion that any information about the jurors was withheld from the parties. Throughout voir dire, the potential jurors were asked personal questions about their health problems, whether they or their family members had been convicted of or were a victim of a crime, their employment status, the employment status of their family members, their marital status, whether they had children, their prior experiences with police, and whether they or anyone that they were close with had been the victim of sexual assault. At one point, defense counsel referred to one juror by name and stated that he wrote the jurors' names down on a chart, evidencing that the jurors' names and questionnaires were not withheld from the parties. Additionally, both parties exercised numerous for cause and peremptory challenges, demonstrating that the parties' ability to effectively examine the venire was not compromised. And defendant does not identify any juror information that was withheld from the parties. Consequently,

defendant has not shown that his ability to examine the potential jurors was compromised by referring to the potential jurors by number rather than by name.

Moreover, nothing in the record indicates that referring to the jurors by number undermined defendant's presumption of innocence. Neither party, nor the trial court, made any comment regarding the fact that the jurors were being referred to by number rather than by name. As such, there was nothing to suggest to the jurors that "the use of numbers rather than names [was] anything out of the ordinary," or that "defendant's trial was being handled in a special way, with the resulting implication that he was generally dangerous or guilty as charged." *Williams*, 241 Mich App at 524. Furthermore, during voir dire, the parties repeatedly emphasized that defendant was presumed innocent and the trial court instructed the jury before voir dire, before opening statements, and after closing arguments that defendant was presumed innocent. Jurors are presumed to follow their instructions. *People v Henry*, 315 Mich App 130, 150; 889 NW2d 1 (2016). Accordingly, the record does not reflect that any juror information was withheld from the parties or that the trial court's practice of referring to the jurors by number rather than name undermined defendant's presumption of innocence or precluded meaningful voir dire. Therefore, defendant has not shown that the trial court plainly erred or that he was prejudiced by the trial court's use of numbers to refer to the jurors during trial.

Defendant also argues that empaneling an anonymous jury should be considered a structural error and that trial courts should be required to justify the use of an anonymous jury. Defendant relies on two out-of-jurisdiction cases to support his position, *United States v Sanchez*, 74 F3d 562 (CA 5, 1996), and *State v Tucker*, 259 Wis 2d 484; 2003 WI App 12; 657 NW2d 374 (2003). These two cases were addressed in *Hanks* with regard to the defendant's argument that *Williams* was wrongly decided. *Hanks*, 276 Mich App at 94-95. The *Hanks* Court concluded that the defendant's reliance on those two cases was misplaced, declined to adopt their reasoning, and concluded that *Williams* was not wrongly decided, holding:

> In reaching our conclusion, we find that defendant's reliance on two out-of-jurisdiction cases is misplaced. In [*Sanchez*], the United States Court of Appeals for the Fifth Circuit held that the trial court improperly withheld from the parties the jurors' names, the names of their spouses, the jurors' addresses, and the jurors' employers. But defendant fails to acknowledge a subsequent Fifth Circuit case that held that withholding jurors' names and addresses did not rise to the level of an anonymous jury. See *United States v Branch*, 91 F3d 699, 723 (CA5, 1996). We are bound by *Williams*, which found *Branch* persuasive. *Williams*, *supra* at 523; 616 NW2d 710.
>
> Defendant also cites [*Tucker*], which held that withholding jurors' names only implicates a potential "anonymous jury." Although judicial decisions of foreign jurisdictions may be persuasive, they are not binding. *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006). We are not persuaded that *Williams* was wrongly decided. [*Hanks*, 276 Mich App at 95-96 (footnote omitted.)]

MCR 7.215(J)(1) requires "[a] panel of the Court of Appeals [to] follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990." Therefore, this Court is bound by *Williams* and *Hanks*. And, in any event, we conclude

that *Hanks* and *Williams* fully addressed and properly rejected the argument defendant raises in this case.

## III. OV 11

Defendant argues that 50 points were improperly assessed for OV 11 because there was no evidence that more than one penetration arose from each incident. We agree that 50 points should not have been assessed, but conclude that 25 points should have been assessed. Because subtracting 25 points from defendant's total OV score does not affect his minimum sentencing guidelines range, defendant is not entitled to resentencing.

This Court reviews "for clear error the trial court's factual determinations used for sentencing under the sentencing guidelines, facts that must be supported by a preponderance of the evidence." *People v Dickinson*, 321 Mich App 1, 20-21; 909 NW2d 24 (2017). The trial court's factual determinations are clearly erroneous if this Court is "left with a definite and firm conviction that the trial court made a mistake." *Id*. This Court reviews de novo the trial court's interpretation and application of the sentencing guidelines. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

As a preliminary matter, at sentencing, the trial court judge asked the parties whether they had "[a]ny deletions, corrections, or amendments" to make to the presentence investigation report (PSIR). Defense counsel stated twice that "there are no additions, corrections, or deletions to be made." As a result, the trial court did not provide an explanation for assessing 50 points for OV 11. The prosecution asserts that defendant waived any challenge to the scoring of the sentencing guidelines when his trial counsel stated that "there are no additions, corrections, or deletions to be made." This Court has explained that a defendant does not waive a challenge to the scoring of the guidelines by indicating that he does not have any additions or corrections to PSIR without clearly expressing satisfaction with the court's decision as to an OV score. *People v Hershey*, 303 Mich App 330, 349-353; 844 NW2d 127 (2013). Accordingly, defendant's objection to the scoring of OV 11 was not waived, but properly preserved by filing a motion to remand in this Court. *Id*. at 353; *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012).

Turning to the substantive issue presented, OV 11 addresses the proper scoring of criminal sexual penetration. MCL 777.41. The trial court must assign 50 points for OV 11 if "[t]wo or more criminal sexual penetrations occurred." MCL 777.41(1)(a). Twenty-five points must be assessed for OV 11 if "[o]ne criminal sexual penetration occurred." MCL 777.41(1)(b). And zero points must be assessed for OV 11 if "[n]o criminal sexual penetration occurred." MCL 777.41(1)(c).

In scoring OV 11, the trial court must "[s]core all sexual penetrations of the victim by the offender arising out of the sentencing offense." MCL 777.41(2)(a). But the trial court may "not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense." MCL 777.41(2)(c); *People v Johnson*, 474 Mich 96, 102 n 2; 712 NW2d 703 (2006) ("[I]t is clear that each criminal sexual penetration that forms the basis of its own sentencing offense cannot be scored for purposes of that particular sentencing offense."); *People v Baskerville*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345403); slip op at 10. Consistent with MCL 777.41(2)(a), however, the trial court must score "[a]ll other sexual penetration arising

from the sentencing offense, including penetrations resulting in separate CSC-I or CSC-III convictions . . . under OV 11." *People v Lampe*, 327 Mich App 104, 118; 933 NW2d 314 (2019). See also *People v Cox*, 268 Mich App 440, 455-456; 709 NW2d 152 (2005), citing *People v McLaughlin*, 258 Mich App 635, 676-677; 672 NW2d 860 (2003) ("[T]his Court rejected the argument that OV 11 could not be scored because each of three penetrations was the basis of a separate CSC charge . . . . [T]he proper interpretation of OV 11 requires the trial court to exclude the one penetration forming the basis of the offense when the sentencing offense itself is CSC I or CSC III.").

"The sentencing offense is the crime of which the defendant has been convicted and for which he or she is being sentenced." *People v McGraw*, 484 Mich 120, 122 n 3; 771 NW2d 655 (2009). Defendant's sentencing offense was for his CSC-III conviction arising out the penetration of defendant's penis into JE's genital opening. Under MCL 777.41(2)(c), however, no points are scored for this penetration because it forms the basis of the CSC-III offense. *Johnson*, 474 Mich at 96 n 2; *Baskerville*, ___ Mich App at ___; slip op at 10.

The next question is whether any of defendant's other criminal sexual penetrations arose out of the sentencing offense. MCL 777.41(2)(a). "The phrase 'arising out of' suggests 'a causal connection between two events of a sort that is more than incidental.' " *Baskerville*, ___ Mich App at ___; slip op at 10, quoting *Johnson*, 474 Mich at 101. "Something that 'aris[es] out of,' or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *Id*. (alteration in original). Separate instances of sexual penetration do not arise out of each other when they occurred on different dates and the connection was only incidental. *Id*. at 102. On the other hand, distinct acts of sexual penetration, which occur "on the same day, at the same place, [and] during the same course of conduct," arise "out of the sentencing offense for purposes of OV 11." *Lampe*, 327 Mich App at 117-118.

In this case, the prosecution contends that all of defendant's convictions arose from the initial digital penetration based on defendant's offer to extend a privilege to JE in exchange for a sexual favor. The prosecution argues that *Baskerville* is instructive. In *Baskerville*, the defendant was convicted of "human trafficking enterprise involving death, MCL 750.462d(b)," among a number of other convictions. *Baskerville*, ___ Mich App at ___; slip op at 1. The defendant trafficked a 17-year-old, arranging for her to have sex with a man. *Id*. at 2. After the teenager engaged in fellatio with the man, he requested vaginal intercourse. *Id*. The teenager refused and the man demanded his money be returned. *Id*. A dispute arose and the defendant intervened, killing the man. *Id*. This Court upheld the trial court's assessment of 50 points for OV 11. *Id*. at 10-11. This Court reasoned that "although the defendant did not personally engage in sexual relations with the [teenager] for money as part of the commercial enterprise, he did engage in sexual relations with her as a result of her being forced into the criminal enterprise." *Id*. at 10. This Court held there was "a sufficient causal connection between the crime and the sexual penetrations to score them for OV 11," under *Johnson*. *Baskerville*, ___ Mich App at ___; slip op at 10.

Recognizing the unequal balance of power in the parent-child relationship, we are not entirely persuaded that the prosecution's comparison to *Baskerville*, where, as part of a human-trafficking enterprise, the defendant arranged for a teenager to perform sexual acts on others for monetary gain, is apt. Review of the record in this case shows there was "normally" a separate "discussion" regarding a discrete sexual act or acts in exchange for a specific privilege. And there is no evidence that defendant and JE "agreed" to engage in further future sex acts during the discussion resulting in the initial digital penetration to suggest "a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *Johnson*, 474 Mich at 101.

In direct contrast to the prosecution's argument that every sexual penetration that occurred between November 2017 and May 2018 arose from defendant's initial digital penetration, defendant argues that each criminal sexual penetration was a discrete, unrelated event. We agree that the digital and oral penetrations, along with one of the vaginal penetrations accomplished through use of an object, did not arise out of the sentencing offense; however, a second vaginal penetration defendant committed by using an object (a dildo) arose from the sentencing offense.

Again, as it applies to OV 11, "arising out of" means that there is a causal connection between the penetrations that is more than incidental. *Johnson*, 474 Mich at 101. JE testified that, immediately after defendant unsuccessfully attempted penile-vaginal penetration (the sentencing offense), he retrieved an object (the dildo) and used it to penetrate her vagina. As described by JE, defendant succeeded in his apparent goal of vaginal penetration by utilizing the dildo after his failed attempt at penile-vaginal penetration. This act constitutes a criminal sexual penetration under MCL 750.520d(1)(d). See also MCL 750.520a(r) (" 'Sexual penetration' means . . . any other intrusion, however slight, . . . of any object into the genital . . . opening[] of another person's body . . . ."). The prosecution charged defendant with this sexual penetration by an object in Count V and the jury convicted. This second criminal sexual penetration with an object occurred "on the same day, at the same place, and during the same course of conduct" as the earlier penile penetration, the sentencing offense. *Lampe*, 327 Mich App at 118. Thus, although we agree with defendant that the other sexual penetrations, which occurred on different dates, did not arise out of the sentencing offense, see *Johnson*, 474 Mich at 101-102, we conclude that defendant's sexual penetration with an object arose from the sentencing offense, *Lampe*, 327 Mich App at 118 (citations omitted).

Accordingly, the trial court erred when it assessed 50 points for OV 11 because there were not two scoreable criminal sexual penetrations that arose from the sentencing offense. MCL 777.41(1)(a). Instead, the trial court was required to assess 25 points for OV 11 because there was one scoreable criminal sexual penetration arising out of the sentencing offense. MCL 777.41(1)(b) and (2)(a) and (c).

Reducing the score of OV 11 from 50 to 25 points lowers defendant's total OV score from 100 to 75 points. This change, however, does not affect defendant's OV Level, which remains at Level VI for CSC-III, a Class B offense. MCL 777.16y; MCL 777.63. Likewise, this 25-point

reduction does not alter defendant's recommended minimum sentencing guidelines range of 57 to 95 months, and, therefore, defendant is not entitled to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.").

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto
/s/ Anica Letica