STATE of Wisconsin, Plaintiff-Respondent,

v.

Tally Ann ROWAN, Defendant-Appellant.

Supreme Court

*No. 10AP1398–CR. Oral argument February 7, 2012.
—Decided June 8, 2012.*

2012 WI 60

(Also reported in 814 N.W.2d 854.)

For the defendant-appellant, there were briefs and oral argument by *Paul G. LaZotte,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Maura F.J. Whelan,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

An amicus curiae brief was filed *Anne Bensky* and *Garvey, McNeil, & Associates, S.C.,* Madison, on behalf of the Wisconsin Association of Criminal Defense Lawyers.

¶ 1. N. PATRICK CROOKS, J. This case comes to us on certification from the court of appeals pursuant to Wis. Stat. Rule 809.61 (2009–10). It requires us to address two questions arising from Tally Ann Rowan's

convictions.[1] The first question concerns a condition imposed as part of Rowan's extended supervision, which she argues is overly broad and violative of her constitutional rights. The certification asks us to determine "whether a sentencing court violated the Fourth Amendment [to the United States Constitution] or Wis. Const. art. I, § 11, by setting a condition of extended supervision that allows any law enforcement officer to search the defendant's person, vehicle, or residence for firearms, at any time and without probable cause or reasonable suspicion."

¶ 2. The facts of this case are important to the circuit court's decision to impose the above condition on Rowan's extended supervision, as the circuit court noted. Rowan's arrest and convictions resulted from an incident on March 13, 2008, during which a police officer observed Rowan drive erratically, run a stop sign, and crash into a pole. Rowan appeared intoxicated and agitated. She cursed emergency responders, and asked them where her gun was while reaching toward the floor of her car. Police later discovered a semiautomatic handgun and ammunition on the floor of the driver's side of Rowan's car. Rowan was taken to the hospital for medical treatment and a blood draw, where she was placed under arrest. At the hospital, Rowan

---

[1] Rowan was convicted of battery to a police officer, contrary to Wis. Stat. § 940.20(2) (2007–08); obstructing an officer, contrary to Wis. Stat. § 946.41(1); carrying a concealed weapon, contrary to Wis. Stat. § 941.23; operating a motor vehicle while under the influence of an intoxicant and operating a motor vehicle with a prohibited alcohol concentration (PAC), contrary to Wis. Stat. § 346.63(1)(a) and § 346.63(1)(b).

All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

was combative, cursing, spitting, and grabbing medical staff. She threatened to kill the officers and medical staff in the emergency room, and further threatened to kill their families. Rowan resisted a police officer who tried to restrain her, and seriously injured the officer's hand.

¶ 3. The circuit court considered the nature of Rowan's crime—involving violence, threats, and a firearm—and Rowan's conduct prior to and during the trial. The court stated, "The scope of persons that she threatened was quite expansive and shows at least at that point an unusual level of risk to the public while she was in this mind set." Further, the court noted that Rowan was charged in a separate case with threatening a judge. There was also testimony from a gun shop owner that Rowan had purchased several guns after the March 13, 2008, incident at issue and before she was sentenced. In prescribing the search condition, the circuit court relied on these facts that reflect Rowan's history of violence and threats, which often involved firearms.

¶ 4. We hold that while the condition that the circuit court imposed on Rowan's extended supervision "may impinge on constitutional rights,"[2] it does not violate them. The supervision condition imposed in this case does not violate Rowan's constitutional rights because the circuit court made an individualized determination, pursuant to the circuit court's authority under Wis. Stat. § 973.01(5), that the condition was necessary based on the facts in this case—involving violence, threats, and a firearm. It conforms with the applicable two-part test—that it is "not overly broad"

[2] *Edwards v. State,* 74 Wis. 2d 79, 84–85, 246 N.W.2d 109 (1976).

and that it is "reasonably related" to Rowan's rehabilitation.[3] It is instructive that the United States Supreme Court determined in *Samson v. California*[4] that a suspicionless search of a prisoner who has been released but remains under supervision by corrections officials, which includes a person released under community supervision, was reasonable under the Fourth Amendment. It based that conclusion on such persons' severely diminished privacy expectations and the State's great interest in preventing such persons from reoffending.[5] The State relies on *Samson* in arguing that the condition here does not violate Rowan's constitutional rights. Rowan counters that *Samson*'s holding is distinguishable because it relied heavily on California's statute authorizing suspicionless searches, while the condition imposed here was made solely on a sentencing court's authority. We hold that under the facts of this case, the condition imposed satisfies both parts of the applicable test and therefore does not violate Rowan's rights under the Fourth Amendment to the United States Constitution or Wisconsin Constitution Article I, Section 11.

¶ 5. The second question presented by this case concerns the sufficiency of the evidence in regard to Rowan's conviction for battery to a police officer. One of the elements of that crime that must be proved beyond a reasonable doubt is that the officer who is the victim was "acting in an official capacity" at the time of the battery. Rowan argues that the evidence was insuffi-

---

[3] *State v. Oakley,* 2001 WI 103, ¶ 19, 245 Wis. 2d 447, 629 N.W.2d 200; *Edwards,* 74 Wis. 2d at 84–85; *Krebs v. Schwarz,* 212 Wis. 2d 127, 131, 568 N.W.2d 26 (Ct. App. 1997).

[4] *Samson v. California,* 547 U.S. 843 (2006).

[5] *Id.* at 852–53.

cient on that element, because the evidence showed that the officer was assisting a nurse who was performing a medical procedure, which she claims is not what the officer is employed to do. The State argues that in restraining a combative person who was under arrest, the officer was "acting in an official capacity" at the time of the injury. Under the standard of review that applies to a sufficiency of the evidence challenge, our review of the trier of fact's findings is highly deferential. The jury heard that the officer was dispatched to the hospital by her employer; that she assisted fellow officers and medical staff with Rowan, a combative suspect who was under arrest for drunk driving; and that Rowan was at the hospital for a blood draw, without her consent, as part of the investigation of a crime. Given the standard of review that governs this challenge, we are satisfied that the evidence presented to the jury, "viewed most favorably to the state and the conviction," is not "so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt."[6]

¶ 6.   For the reasons stated herein, we affirm the judgment of the circuit court.

---

[6] *State v. Hayes,* 2004 WI 80, ¶¶ 56–57, 273 Wis. 2d 1, 681 N.W.2d 203 (footnotes omitted), states:

> The standard of review in determining whether the evidence was sufficient to support a conviction is that "an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt."

> Our review of a sufficiency of the evidence claim is therefore very narrow. We give great deference to the determination of the trier of fact. We must examine the record to find facts that support upholding the jury's decision to convict.

# I. BACKGROUND

¶ 7.   The series of events that led to Rowan's convictions began when a police officer on patrol started following Rowan's vehicle after seeing her drive erratically and run a stop sign around 2 a.m. on March 13, 2008. Moments later, Rowan crashed into a pole. At the scene of the accident she appeared intoxicated and was highly agitated. She cursed emergency responders and reached toward the floor while asking them where her gun was, apparently trying to locate the semiautomatic handgun that police later recovered from the floor on the driver's side of the vehicle, along with a box of ammunition. At the hospital where Rowan was taken for emergency medical treatment and a blood draw, she was placed under arrest and continued to be combative, cursing, spitting, grabbing medical staff, and threatening to kill them and their families. Before the blood draw when a police officer stationed at the side of her hospital bed attempted to restrain her, Rowan resisted and seriously injured the officer's hand. Rowan was charged with five counts related to the March 13 incident: in one case, she was charged with battery to a law enforcement officer[7], obstructing an officer, and carrying a concealed weapon; in a second case, she was charged with OWI, third offense, and operating with a prohibited alcohol content (PAC). A jury convicted Rowan on all counts. For the battery conviction, which is the only conviction relevant to this appeal, Rowan was sentenced to one year and two months of initial confinement and three

---

[7] Wisconsin Stat. § 940.20(2) (2007–08) states,

Whoever intentionally causes bodily harm to a law enforcement officer . . . acting in an official capacity and the person knows or has reason to know that the victim is a law enforcement officer . . . by an act done without the consent of the person so injured, is guilty of a Class H felony.

years of extended supervision. Among the conditions of extended supervision imposed by the sentencing court was the condition that is the focus of this appeal: that "[Rowan's] person or her residence or her vehicle is subject to search for a firearm at any time by any law enforcement officer without probable cause or reasonable suspicion."[8] The circuit court noted, "I think the constitution would require the search be done in a reasonable manner."

[8] The court had initially phrased the condition slightly differently. At the sentencing, the court had stated that the conditions (as relevant to this appeal) were "No possession of firearms or ammunition" and "Defendant must consent to a search at any time." [R. 82] In response to a post-conviction motion by Rowan requesting that the conditions be modified to delete the consent-to-search requirement, the court stated on the record (and asked the clerk to verify the statement by reading it back to the courtroom) that the condition should be reworded to state, "The defendant's person or her residence or her vehicle is subject to search for a firearm at any time by any law enforcement officer without probable cause or reasonable [suspicion]."

As counsel for Rowan acknowledged at oral argument before this court, it was evident in the context of the hearing that the circuit court intended for the term "law enforcement officer" to encompass agents who supervise persons on probation, parole or extended supervision. The transcript of the hearing shows that Rowan's counsel said, "I would ask on behalf of Ms. Rowan that *police officers and field staff of the Department of Corrections* have to have reasonable suspicion. The concern I have if it just states [']may search at any time for a firearm['] that as a practical matter would allow them to search at any time. There would be no kind of restrictions or no protection of her privacy. . . . " (Emphasis added.) In response, the circuit court states, in part, "The message I would rather have in Tally Rowan's mind is, I have no idea when *they* can come in, and *they* can come in to search for a firearm even without reasonable suspicion." The *court in its response made no distinction between the two* categories mentioned by counsel.

289

¶ 8.   It is helpful to a complete understanding of the circuit court's reasoning that we set forth an excerpt from the hearing on the post-conviction motion where the circuit court put its analysis and the factual basis for the condition on the record:

> In this case, I think the argument is fair, if I was saying that with every case no matter what, [defendant is subject to] search for anything. What I'm going to do is modify that a little bit to say any law enforcement officer can search her person, her premises or any vehicle she is riding in at any time without probable cause to search for a firearm. Limit that infringement on her Fourth Amendment right to firearms. The reason why I'm tailoring is to balance her constitutional rights against achieving these two goals.

> This case is notable in certain respects. First of all, it did involve a firearm. It involved a concealed firearm carried in a vehicle. It was a concealed firearm that she threatened to use against an officer at a time when she had possession of it.

> She also threatened emergency personnel on the scene. She threatened the doctor in the emergency room. She threatened the officers in the emergency room. She threatened medical staff. She threatened the family of those persons. There is even a discussion about threatening somebody's grandmother . . . . The scope of persons that she threatened was quite expansive and shows at least at that point an unusual level of risk to the public while she was in this mind set.

> Many of those threats included threats to use a firearm. So it was specific to firearms as well. I note in passing that there were other cases involving threats to the judge. I just note that as being a continuation of threatening conduct and specifically threats to Judge Wing, which didn't involve me. That was a continuation of a pattern of threatening behavior. I still don't quite now know what the details of the threats were. It really doesn't matter to me. She was convicted of those two

crimes. So I note them as a continuation of that threatening conduct even while she was incarcerated.

I think just having her know at any time she could be searched for the possession of a firearm, and if she would be in illegal possession, it could result in her return to confinement and will aid the rehabilitation goal because it will encourage her to not possess a firearm when she is returned to the community. I also note as a convicted felon she couldn't possess one any way, but I'm not making this order because of her felony status. *It's because of the nature of the underlying offense and the facts specific to this particular case.*

(Emphasis added.)

## II. DISCUSSION

## A. THE SUSPICIONLESS SEARCH CONDITION ■■

¶ 9.    The first question we address is a challenge to the constitutionality of a condition for a person released into the community under supervision, including those on probation, parole or extended supervision. It is important to highlight the fact that, in the instant case, we analyze the constitutionality of an individualized supervision condition that applies only to Rowan and was imposed by a circuit court pursuant to its authority under Wis. Stat. § 973.01(5)[9] after the circuit court made an individualized determination that the condition was necessary based on the facts in this case— involving violence, threats, and a firearm. Rowan claims that the condition authorizing suspicionless searches of her person, vehicle and residence for a

_____

[9] Wisconsin Stat. § 973.01(5) provides: "Extended supervision conditions. Whenever the court imposes a bifurcated sentence under sub. (1), the court may impose conditions upon the term of extended supervision."

291

firearm violates her rights under the United States Constitution and the Wisconsin Constitution. "Whether a seizure or search . . . passes statutory and constitutional muster are questions of law subject to de novo review." *State v. Richardson,* 156 Wis. 2d 128, 137–38, 456 N.W.2d 830 (1990).

> Both the fourth amendment to the federal constitution and Article I, sec. 11 of the Wisconsin Constitution guarantee citizens the right to be free from "unreasonable searches and seizures." The Wisconsin Supreme Court consistently follows the United States Supreme Court's interpretation of the search and seizure provision of the fourth amendment in construing the same provision of the state constitution.

*Id.* at 137 (internal citations omitted).

¶ 10. The test set forth for analyzing the constitutionality of conditions of probation has two parts: "[C]onditions of probation may impinge upon constitutional rights as long as they [1.] are not overly broad and [2.] are reasonably related to the person's rehabilitation."[10] A condition is reasonably related to the person's rehabilitation "if it assists the convicted individual in conforming his or her conduct to the law."[11] It is also appropriate for circuit courts to consider an end result of encouraging lawful conduct, and thus increased protection of the public, when determining what individualized probation conditions are appropriate for a particular person. *See Edwards v. State,* 74 Wis. 2d 79, 83, 246 N.W.2d 109 (1976) (stating that probation "is granted with the goals of rehabilitation and

---

[10] *Oakley,* 245 Wis. 2d 447, ¶ 19; *Edwards,* 74 Wis. 2d at 84–85; *Krebs,* 212 Wis. 2d at 131.

[11] *Oakley,* 245 Wis. 2d 447, ¶ 21.

protection of society in mind" and that a condition forbidding association with co-defendants "was designed for [the defendant's] rehabilitation and the protection of society"); *Krebs v. Schwarz,* 212 Wis. 2d 127, 132, 568 N.W.2d 26 (Ct. App. 1997) (finding constitutional a probation condition requiring an agent's approval for a sexual relationship on the grounds that "the condition is narrowly drawn and is reasonably related to [his] rehabilitation, as well as the protection of the public"). *See also State v. Brown,* 2006 WI 131, ¶ 44, 298 Wis. 2d 37, 725 N.W.2d 262 (stating that "[u]nder Truth-in-Sentencing, extended supervision and reconfinement are, in effect, substitutes for the parole system that existed under prior law"). While probation, parole and extended supervision are not the same in all respects, it is appropriate to analyze the condition of extended supervision at issue in this case under the *Edwards/Oakley/Krebs* test we have used previously to analyze the constitutionality of probation conditions.[12] Probation, parole and extended supervision all involve persons under community supervision.

■■

¶ 11.    Concerning the first part of the test, the fact that the condition authorizes suspicionless searches by any law enforcement officer for the duration of Rowan's extended supervision does not make the condition

[12] *See Samson,* 547 U.S. at 847–50 (determining the constitutionality of a search condition imposed on those on parole pursuant to the analysis from *United States v. Knights,* 534 U.S. 112 (2001), which examined the constitutionality of a search condition imposed on all probationers); *see also State v. Koenig,* 2003 WI App 12, ¶ 7 n.3, 259 Wis. 2d 833, 656 N.W.2d 499 ("[W]e conclude that authority relating to the propriety of conditions of probation is applicable to conditions of extended supervision."); *State v. Fisher,* 2005 WI App 175, ¶ 17, 285 Wis. 2d 433, 702 N.W.2d 56 (same).

overly broad. As noted above, in *Samson,* the United States Supreme Court addressed a much broader question than that presented in this case and upheld the constitutionality of a California statute[13] that subjected *all* persons released on parole to suspicionless searches by "a parole officer or other peace officer at any time of the day or night."[14] (Such searches were still subject to state law prohibiting "arbitrary, capricious or harassing" searches,[15] and the legislature stated that it did not intend "to authorize . . . searches for the sole purpose of harassment."[16]) The California statute imposed this condition on anyone released from prison on parole, and Samson was released on parole when searched pursuant to this law.[17] The Supreme Court based its ruling on the proposition that persons on parole have "severely diminished expectations of privacy by virtue of

---

[13] Cal. Penal Code § 3067(a) (West 2000) states, "Any inmate who is eligible for release on parole . . . shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." We note that the condition at issue here does not require Rowan's consent or agreement to search, and makes Rowan's "person or her residence or her vehicle subject to search for a firearm at any time . . . ." The circuit court initially described Rowan's supervision condition as "[c]onsent to search of your person, any premises you occupy or any vehicles you occupy at any time without probable cause." The circuit court later modified the condition and removed the consent-to-search reference.

[14] *Samson,* 547 U.S. at 852, 856; Cal. Penal Code § 3067(a).

[15] *Samson,* 547 U.S. at 856 (quoting *People v. Reyes,* 968 P.2d 445, 450 (Cal. 1998)).

[16] Cal. Penal Code § 3067(d) states, "It is not the intent of the Legislature to authorize law enforcement officers to conduct searches for the sole purpose of harassment."

[17] *Samson,* 547 U.S. at 846–47.

their status alone," as well as a recognition that "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among . . . parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment."[18]

¶ 12.   Similarly, in *Griffin v. Wisconsin,* the United States Supreme Court upheld a Wisconsin regulation that permits warrantless searches of a probationer's home by a probation officer if that officer has "reasonable grounds to believe" that the person possesses contraband.[19] The Court concluded that these searches did not violate the Fourth Amendment due to "the special needs of Wisconsin's probation system," including permitting "probation officials to respond quickly to evidence of misconduct" and "the deterrent effect that the possibility of expeditious searches would otherwise create."[20]

¶ 13.   While the *Samson* and *Griffin* decisions did not address the precise question presented here, their holdings support our analysis under the *Edwards/*

---

[18] *Id.* at 852–53.

[19] 483 U.S. 868, 870–71 (1987) (internal quotations omitted).

[20] *Id.* at 875–76. We note that the regulation at issue in *Griffin,* Wis. Admin. Code § DOC 328.21 (June 1999), allows only probation agents, not police officers, to conduct a search on the basis of reasonable suspicion that a probationer has contraband. *See State v. Hajicek,* 2001 WI 3, ¶¶ 36–38, 240 Wis. 2d 349, 620 N.W.2d 781; *State v. Jones,* 2008 WI App 154, ¶ 10, 314 Wis. 2d 408, 762 N.W.2d 106; *see also infra* ¶ 14 n.20. In contrast, this case involves an individual supervision condition that applies only to Rowan and allows any law enforcement officer to search her person, vehicle or residence without reasonable suspicion. This opinion should not be construed as intended to modify Wis. Admin. Code § DOC 328.21 or the above case law.

*Oakley/Krebs* test and leave little doubt of the correct result in the context presented here.

¶ 14. Rowan's extended supervision condition unquestionably impinges on her privacy more than the standard conditions imposed on persons on extended supervision by exposing her to search by law enforcement officers including agents supervising persons on probation, parole or extended supervision. It further impinges on her privacy by eliminating the requirement that would otherwise apply to agents—i.e., that searches of supervised persons must be made "only in accordance with [the procedures set forth in Wis. Admin. Code § DOC 328.21 (June 1999)]."[21] Even so, the aspects of

---

[21] Wisconsin Admin. Code § DOC 328.21(1) states,

General policy. A search of a client, the client's body contents or the client's living quarters or property may be made at any time, but only in accordance with this section.

(2) Personal search. (a) In this subsection, "personal search" means a search of a client's person, including but not limited to the client's pockets, frisking the client's body, an examination of the client's shoes and hat, and a visual inspection of the client's mouth.

(b) A personal search of a client may be conducted by any field staff member:

1. If the staff member has reasonable grounds to believe that the client possesses contraband;

2. At the direction of a supervisor;

3. Before a client enters and after a client leaves the security enclosure of a correctional institution, jail or detention facility; or

4. When a client is taken into custody.

(c) A written report of every personal search shall be prepared by the staff member who conducted the search and shall be filed in the client's case record.

(3) Search of living quarters or property. (a) A search of an offender's living quarters or property may be conducted by field staff if there are reasonable grounds to believe that the quarters or

the condition that are more intrusive are still not overly broad such that they violate her protections under the Fourth Amendment or Article I, Section 11. As the *Samson* Court made clear, persons in Rowan's position have diminished privacy expectations, and the State has greater interests in supervising them to prevent criminal conduct, and those two facts make searches reasonable that would otherwise not be:

> Examining the totality of the circumstances pertaining to petitioner's status as a parolee, "an established variation on imprisonment," including the plain terms of the parole search condition, we conclude that petitioner did not have an expectation of privacy that society would recognize as legitimate.

> The State's interests, by contrast, are substantial. This Court has repeatedly acknowledged that a State has an "overwhelming interest" in supervising parolees because "parolees . . . are more likely to commit future criminal offenses." Similarly, this Court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.

*Samson,* 547 U.S. at 852–53 (internal citations and footnotes omitted).

¶ 15. Additionally, even the dissent in *Samson* suggested that it would have upheld an individualized

property contain contraband or an offender who is deemed to be in violation of supervision. Approval of the supervisor shall be obtained unless exigent circumstances, such as suspicion the offender will destroy contraband, use a weapon or elude apprehension, require search without approval.

(b) There shall be a written record of all searches of a client's living quarters or property.

extended supervision condition such as the condition at issue here. The *Samson* dissent indicated that it likely would have approved of a supervision condition allowing suspicionless searches if "a court or parole board imposed the condition at issue based on specific knowledge of the individual's criminal history and projected likelihood of reoffending, or if the State had had in place programmatic safeguards to ensure evenhandedness."[22] That is precisely what the circuit court did in imposing the search condition for Rowan based on "the nature of the underlying offense and the facts specific to [her] particular case." *Samson* and *Griffin* upheld blanket search conditions authorized by statute to be applied to a whole class of persons on supervision. Unlike *Samson* and *Griffin,* this case involves an individualized search condition that the circuit court, acting under its statutory authority pursuant to Wis. Stat. § 973.01(5), determined was necessary for Rowan specifically.

¶ 16.   In this case, the circuit court had evidence that Rowan had concealed a semiautomatic handgun unlawfully and had possessed ammunition for it as well. At trial, the court heard an audio tape made of Rowan's lengthy threatening rant at the hospital, in which she specifically threatened to find and kill people, including a doctor, police officers, other members of the medical staff, and their family members. The court heard testimony by a gun shop owner that between the time of the March 13 incident and the day she was charged in the cases, Rowan had purchased several guns. As the court noted, the pattern continued while this case was pending, Rowan was also charged in a separate case with threatening judges in comments she made while in jail. The court went to some effort to articulate carefully the

---

[22] *Samson,* 547 U.S. at 865 (Stevens, J., dissenting).

specific factual basis for the search condition the court imposed and the boundaries of that condition.

¶ 17. The court limited its authorization to searches "for firearms," and therefore by implication only to searches where a firearm could be concealed. The circuit court further clarified that the search condition did not dispense with the constitutional requirement that "the search be done in a reasonable manner."[23] Of course, the order is also limited in time to the length of Rowan's extended supervision. In addition, though we examine the condition itself, noting that no actual search has yet been conducted, any search carried out pursuant to the condition would still, as the circuit court noted, be subject to constitutional challenge if it was conducted in an unreasonable manner. For these reasons, the condition imposed by the sentencing court was limited so as not to be overly broad.

¶ 18. We next turn to the second part of the test relating to the constitutionality of the condition of extended supervision, including persons released on community supervision such as probation and parole. We conclude that the condition is, under the circumstances presented here, reasonably related to Rowan's rehabilitation. A condition is reasonably related to a person's rehabilitation "if it assists the convicted individual in

---

[23] *See supra* ¶ 11 and note 14 (noting that *Samson,* 547 U.S. at 856, relied in part on the fact that California law prohibited "arbitrary, capricious or harassing searches" in its decision to uphold the suspicionless search condition under the California statute). Here, in the State's oral argument, it emphasized that the circuit court ensured that law enforcement could not conduct harassing searches of Rowan by noting that the order did not change the constitutional requirement that all searches be conducted in a reasonable manner.

conforming his or her conduct to the law."[24] It is also appropriate for circuit courts to consider an end result of encouraging lawful conduct, and thus increased protection of the public, when determining what individualized probation, extended supervision, or parole conditions are appropriate for a particular person. Unsurprisingly, public safety is often mentioned[25] in connection with the goal of rehabilitation: decreased criminality and greater public safety are logically connected to successful rehabilitation efforts. The trial in this case included evidence of the defendant's repeated explicit threats to shoot law enforcement officers and medical professionals and their family members, as well as evidence of the handgun and ammunition recovered from her vehicle, where it had been unlawfully concealed. In light of the circumstances that resulted in her conviction for battery to a law enforcement officer, the condition at issue was reasonably related to Rowan's rehabilitation, because her diminished right to be free from search was designed to assist her in "conforming [her] conduct to the law" by recognizing that her prior criminal conduct demonstrated a pattern involving guns and violent threats. Giving her an increased incentive to refrain from possessing a gun again was

[24] *Oakley,* 245 Wis. 2d 447, ¶ 21.

[25] *Edwards,* 74 Wis. 2d at 83 (stating that probation "is granted with the goals of rehabilitation and protection of society in mind" and that a condition forbidding association with co-defendants "was designed for [the defendant's] rehabilitation and the protection of society"); *Krebs,* 212 Wis. 2d at 128–29, 132 (finding constitutional a probation condition requiring an agent's approval for a sexual relationship on the grounds that "the condition is narrowly drawn and is reasonably related to [his] rehabilitation, as well as the protection of the public").

reasonably related to her rehabilitation. It is clear that Rowan's successful rehabilitation would also serve the interest of public protection and safety.

¶ 19.    For the reasons set forth, we conclude that the condition was limited so that it was not overly broad and was reasonably related to Rowan's rehabilitation. It was therefore permissible under the Fourth Amendment and Wisconsin Constitution Article I, Section 11.

## B.    THE SUFFICIENCY OF THE EVIDENCE AS TO THE OFFICER ACTING IN AN OFFICIAL CAPACITY AT THE TIME OF THE BATTERY

██

¶ 20.    The second issue presented by this appeal is a challenge to the sufficiency of the evidence to support one element of the crime of battery to a law enforcement officer. As we noted earlier:

> The standard of review in determining whether the evidence was sufficient to support a conviction is that "an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt."

> Our review of a sufficiency of the evidence claim is therefore very narrow. We give great deference to the determination of the trier of fact. We must examine the record to find facts that support upholding the jury's decision to convict.

*State v. Hayes,* 2004 WI 80, ¶¶ 56–57, 273 Wis. 2d 1, 681 N.W.2d 203 (footnotes omitted).

¶ 21.    We agree with Rowan that the fact that an officer "is acting in an official capacity" is an element of

the offense that the State must prove beyond a reasonable doubt. The applicable jury instruction (Wis JI-Criminal 915) provides that officers are acting "in an official capacity when they perform duties that they are employed to perform." Rowan argues that police officers "are not employed to assist hospital personnel in providing medical treatment" (App. Br. at 12). She reasons that because the officer here restrained Rowan at the request of the nurse, who was attempting to do a medical procedure related to a blood draw, there is insufficient evidence to support the conviction because the officer was not acting in an official capacity. We consider the evidence that the trier of fact had before it in determining whether Officer Jennifer Knutson was acting in an official capacity when she was injured. The jury heard that Knutson had been dispatched to the hospital by her employer, the River Falls Police Department, at the request of another officer who had witnessed the erratic driving, had seen the crash, and had assisted at the scene. Knutson went to the hospital as requested. The jury heard testimony from the emergency room doctor that when Rowan arrived by ambulance, she was "combative . . . fighting . . . spitting at me, threatening my life and my family's life as well as the life of others in the emergency room." The jury heard testimony that Rowan was put under arrest for operating a vehicle while intoxicated. The jury heard testimony that while in the emergency room, Rowan received treatment for her injuries and was subjected to a blood draw to which she did not consent. That procedure was supervised by the law enforcement officers present. The jury heard testimony from another officer present that Knutson "assisted and [was] standing by with Ms. Rowan." Given that Knutson was dispatched to the hospital by her employer and actively

"assisted" other officers in restraining a combative suspect who was under arrest and under investigation for operating while intoxicated, we are satisfied that the evidence, "viewed most favorably to the state and the conviction," is not "so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt."[26] We are satisfied that there was evidence that supported the jury verdict that included the finding that Officer Knutson was acting in an official capacity at the time of the battery by Rowan.

## III. CONCLUSION

¶ 22. The first question concerns a condition imposed as part of Rowan's extended supervision, which she argues is overly broad and violative of her constitutional rights. The certification asks us to determine "whether a sentencing court violated the Fourth Amendment [to the United States Constitution] or Wis. Const. art. I, § 11, by setting a condition of extended supervision that allows any law enforcement officer to search the defendant's person, vehicle, or residence for firearms, at any time and without probable cause or reasonable suspicion."

¶ 23. The facts of this case are important to the circuit court's decision to impose the above condition on Rowan's extended supervision, as the circuit court noted. Rowan's arrest and conviction resulted from an incident on March 13, 2008, during which a police officer observed Rowan drive erratically, run a stop sign, and crash into a pole. Rowan appeared intoxicated and agitated. She cursed emergency responders, and asked them where her gun was while reaching toward

---

[26] *Hayes,* 273 Wis. 2d 1, ¶ 56.

the floor of her car. Police later discovered a semiautomatic handgun and ammunition on the floor of the driver's side of Rowan's car. Rowan was taken to the hospital for medical treatment and a blood draw, where she was placed under arrest. At the hospital, Rowan was combative, cursing, spitting, and grabbing medical staff. She threatened to kill the officers and medical staff in the emergency room, and further threatened to kill their families. Rowan resisted a police officer who tried to restrain her, and seriously injured the officer's hand.

¶ 24. The circuit court considered the nature of Rowan's crime—involving violence, threats, and a firearm—and Rowan's conduct prior to and during the trial. The court stated, "The scope of persons that she threatened was quite expansive and shows at least at that point an unusual level of risk to the public while she was in this mind set." Further, the court noted that Rowan was charged in a separate case with threatening a judge. There was also testimony from a gun shop owner that Rowan had purchased several guns after the March 13, 2008, incident at issue and before she was sentenced. In prescribing the search condition, the circuit court relied on these facts that reflect Rowan's history of violence and threats, which often involved firearms.

¶ 25. We are satisfied that while the condition that the circuit court imposed on Rowan's extended supervision "may impinge on constitutional rights," it does not violate them. The supervision condition imposed in this case does not violate Rowan's constitutional rights because the circuit court made an individualized determination, pursuant to the circuit court's authority under Wis. Stat. § 973.01(5), that the condition was necessary based on the facts in this case—involving violence, threats, and a firearm. It conforms with the applicable two-part test—that it is "not overly broad" and that it is

"reasonably related" to Rowan's rehabilitation. It is instructive that the United States Supreme Court determined in *Samson v. California*[27] that a suspicionless search of a prisoner who has been released but remains under supervision by corrections officials, which includes a person released under community supervision, was reasonable under the Fourth Amendment. It based that conclusion on such persons' severely diminished privacy expectations and the State's great interest in preventing such persons from reoffending.[28] The State relies on *Samson* in arguing that the condition here does not violate Rowan's constitutional rights. Rowan counters that *Samson*'s holding is distinguishable because it relied heavily on California's statute authorizing suspicionless searches, while the condition imposed here was made solely on a sentencing court's authority. We hold that under the facts of this case, the condition imposed satisfies both parts of the applicable test and therefore does not violate Rowan's rights under the Fourth Amendment to the United States Constitution or Wisconsin Constitution Article I, Section 11.

¶ 26. The second question presented by this case concerns the sufficiency of the evidence in regard to Rowan's conviction for battery to a police officer. One of the elements of that crime that must be proved beyond a reasonable doubt is that the officer who is the victim was "acting in an official capacity" at the time of the battery. Rowan argues that the evidence was insufficient on that element, because the evidence showed that the officer was assisting a nurse who was performing a medical procedure, which she claims is not what the officer is employed to do. The State argues that in

[27] *Samson,* 547 U.S. 843.
[28] *Id.* at 852–53.

restraining a combative person who was under arrest, the officer was "acting in an official capacity" at the time of the injury. Under the standard of review that applies to a sufficiency of the evidence challenge, our review of the trier of fact's findings is highly deferential. The jury heard that the officer was dispatched to the hospital by her employer; that she assisted fellow officers and medical staff with Rowan, a combative suspect who was under arrest for drunk driving; and that Rowan was at the hospital for a blood draw, without her consent, as part of the investigation of a crime. Given the standard of review that governs this challenge, we are satisfied that the evidence presented to the jury, "viewed most favorably to the state and the conviction," is not "so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt."[29]

¶ 27. For the reasons set forth, we affirm the judgment of the circuit court.

*By the Court.*—Affirmed.

[29] *Hayes,* 273 Wis. 2d 1, ¶ 56.