COURT OF APPEALS
DECISION
DATED AND FILED

May 13, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP762-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF3367

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DORIN F. FERGUSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JOSEPH R. WALL and GLENN H. YAMAHIRO, Judges. *Affirmed.*

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Dorin F. Ferguson appeals a judgment convicting him of first-degree intentional homicide with the use of a dangerous weapon as a party to a crime and possession of a firearm as an adjudicated delinquent. He also appeals from the order denying his postconviction motion for relief. Upon review, we affirm.

## BACKGROUND

¶2 On July 23, 2017, the State charged Ferguson with one count of first-degree intentional homicide with the use of a dangerous weapon as a party to a crime and one count of possession of a firearm as an adjudicated delinquent. The charges stemmed from the shooting death of Shaquille Troutman on July 15, 2017. According to the complaint, Milwaukee police arrived at a local hospital after hospital security alerted officers to the presence of a shooting victim, identified as Troutman. The officers interviewed D.F., who stated that he brought Troutman to the hospital after Troutman was robbed and shot by a "heavyset" male wearing a hoodie. D.F. told police that Troutman was a marijuana dealer and had received several calls and text messages asking Troutman to go to the location of North 14th Street and West Nash Streets in Milwaukee. D.F. drove Troutman to the location, where they were approached by the individual. The individual pulled out a gun, stated "[g]ive me everything," and then the individual and Troutman exchanged gunfire. The individual ran away on foot while D.F. drove Troutman to the hospital where Troutman was declared dead. Shortly after the shooting, Ferguson also went to a local hospital with a bullet wound in his arm. He gave police a fake name and stated that he was injured in a shooting at a different location, however a subsequent police investigation revealed that no shooting took place at that location. The complaint further states that a witness told police he saw a "heavyset" individual approach a car, heard gunshots, and

2

then saw the individual run away. The complaint also states that blood recovered from the shooter's flight path matched Ferguson's DNA.

¶3 The matter proceeded to trial where multiple witnesses testified. D.F. testified that on the night of the shooting, he drove Troutman to the intersection of 14th and Nash Streets in Milwaukee, where they stopped and parked. Troutman was in the front passenger seat and the windows were all down. While they were in the car, a tall and thin individual walked past the car, followed shortly thereafter by a "fat" man with his hood up. The heavier individual approached the passenger window and demanded that Troutman and D.F. "give up everything." D.F. said that the heavyset individual lifted his shirt, exposing a large stomach, and then pulled out a gun and pointed it towards the window. D.F. saw Troutman reach for his own gun and then heard numerous gunshots. As D.F. drove away he heard the gunman yell that he had been hit.

¶4 A.R. testified that he lived in the area where the shooting occurred. He stated that on the night of the shooting he heard multiple gunshots and a car "squealing." He looked out his window and saw a heavyset African-American man slowly running through an alley holding what appeared to be a gun.

¶5 S.T. testified that on the night of the shooting he was on his porch, located at the intersection of 14th and Nash Streets. He saw an individual come around the corner on foot, approach a car, and stick his head into the car. S.T. stated that he turned away and then heard shots. S.T. stated that the car drove away and the individual ran through an alley, but S.T. could not recall providing officers with a physical description of the shooter. However, Milwaukee Police Officer Steven Jegen testified that he interviewed S.T. on the night of the shooting

and S.T. described the shooter as a young, heavyset African-American man wearing a black hoodie.

¶6     Detective Craig Thimm testified that on the night of the shooting he interviewed Ferguson at the hospital where Ferguson was seeking treatment. Thimm stated that Ferguson gave false names and relayed he had been injured in a shooting near North 10th Street and West Capitol Drive. Thimm stated that a subsequent investigation found no evidence of a shooting at that location.

¶7     Michael Winker, a forensic investigator with the Milwaukee Police Department, testified that he tested swabs of blood found in the alleyway described by A.R. and S.T. Winker stated that testing showed "the DNA profiles from the three swabs of blood came from Mr. Dorin Ferguson."

¶8     In addition to witness testimony, the jury heard evidence of cell phone records showing contact between Troutman and a particular phone number. Troutman's phone contained a text from that number stating, "3701 North 14 corner house"—the location of the shooting. A phone recovered from Ferguson's home showed prior contact with the number that sent the texts to Troutman.

¶9     During closing arguments, the State acknowledged that its case was based on circumstantial evidence and reminded the jury that Ferguson was charged as a party to the crime, meaning that it was not required to find that Ferguson was actually the shooter. The jury found Ferguson guilty as charged. The trial court sentenced Ferguson to life in prison.

¶10    Following sentencing, Ferguson moved for postconviction relief arguing that he was entitled to a new trial on the grounds of ineffective assistance of counsel. Specifically, Ferguson argued that trial counsel was ineffective for

failing to call L.S., a bystander listed as a witness on the police report. L.S. told police that she hid behind a car when she heard the shooting and then saw "a tall thin male" who appeared to be "armed with a gun" because he was "holding his waist as he was running." Ferguson argued that because the State's case was based on circumstantial evidence, L.S.'s testimony could have raised doubt about the identity of the shooter. Ferguson also argued that trial counsel was ineffective for failing to make a hearsay objection to Officer Jegen's testimony regarding S.T.'s physical description of the shooter.

¶11 The trial court held a *Machner*[1] hearing where trial counsel testified. Trial counsel stated that he did not call L.S. as a witness because her statements were not "probative of anything." Counsel stated that L.S.'s observation was "weak at best" because she did not get a good identification of the shooter. Counsel also stated that L.S.'s statement did not indicate that she actually saw the "tall thin" individual with a gun. L.S. suspected he had a gun based solely on the fact that he had his hand on "his hip or waist."

¶12 As to the failure to make a hearsay objection to Officer Jegen's testimony, trial counsel stated that he did not think the trial court would sustain a hearsay objection because the testimony would likely fall under an exception to the hearsay rule. The postconviction court denied Ferguson's motion, finding that Ferguson had not established that he was prejudiced by counsel's performance.[2] This appeal follows.

---

[1] *See* *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[2] The Honorable Joseph R. Wall presided over Ferguson's trial and sentencing hearing. The Honorable Glenn H. Yamahiro presided over Ferguson's postconviction hearing and entered the order denying his postconviction motion.

**DISCUSSION**

¶13 On appeal, Ferguson again contends that trial counsel rendered ineffective assistance for failing to call L.S. as a witness and for failing to object to Officer Jegen's testimony.[3] Ferguson also challenges the sufficiency of the evidence to support the jury's verdicts.

¶14 Taking Ferguson's arguments out of order, we first address the sufficiency of the evidence. Whether evidence was sufficient to sustain the verdict is a question of law that we review de novo. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. Our review is "highly deferential." *State v. Rowan*, 2012 WI 60, ¶26, 341 Wis. 2d 281, 814 N.W.2d 854. We may not reverse a criminal conviction for allegedly insufficient evidence "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). The jury, not this court, has the duty "to resolve any conflicts or inconsistencies in the evidence and to judge the credibility of the evidence[.]" *State v. Perkins*, 2004 WI App 213, ¶15, 277 Wis. 2d 243, 689 N.W.2d 684. We will not disturb the jury's findings unless "the evidence is inherently or patently incredible[.]" *State v. Saunders*, 196 Wis. 2d 45, 54, 538 N.W.2d 546 (Ct. App.

---

[3] Ferguson has added a third claim of ineffective assistance of counsel in his brief to this court: a claim that trial counsel failed to perform an "adequate cross-examination" of S.T. or to make "effective objections" during S.T.'s testimony. He forfeited this ineffective assistance claim by failing to raise it at the circuit court. *See State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 681-82, 556 N.W.2d 136 (Ct. App. 1996) (explaining that a defendant must preserve an ineffective assistance of counsel claim in a postconviction motion.).

1995). Notably, this standard applies regardless of whether a verdict rests on direct or circumstantial evidence. *Poellinger*, 153 Wis. 2d at 507.

¶15 A person commits first-degree intentional homicide when he or she "causes the death of another human being with intent to kill that person or another." WIS. STAT. § 940.01(1) (2023-24).[4] Because Ferguson was charged as a party to the crime of first-degree intentional homicide, the State was required to prove either that Ferguson intended to kill Troutman or that Ferguson intentionally aided and abetted someone else who intended to kill Troutman. *See* WIS. STAT. § 939.05. The State was also required to prove that the crime was committed with the use of a dangerous weapon.

¶16 Based upon the evidence adduced at trial, a reasonable jury could find that Ferguson either intentionally killed Troutman or that he aided and abetted someone who intended to kill Troutman. As to whether Ferguson intentionally killed Troutman, the evidence established that: two witnesses provided physical descriptions of the shooter that matched Ferguson's physique; testimony established that the shooter approached Troutman's car and pointed the gun at Troutman; the medical examiner determined that multiple gunshot wounds caused Troutman's death; Ferguson was also shot that night and blood found near the scene of the shooting matched Ferguson's DNA; Ferguson lied about the location where he was shot; and cell phone records tied Ferguson's phone to the phone number that directed Troutman to the address where Troutman was shot a few minutes later. A reasonable jury could also infer that Ferguson aided and abetted

---

[4] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

the shooter based upon the following: D.F.'s testimony that a tall and thin individual walked by the car seconds before Ferguson; testimony that nobody else was on the street at the time; testimony that Ferguson called out, possibly to another individual, that he was hit; and testimony that Ferguson fled the scene and lied to officers about where he was shot. Either of these inferences supports Ferguson's conviction for first-degree intentional homicide as a party to a crime with the use of a dangerous weapon.

¶17 Based upon the evidence adduced at trial, a reasonable jury could also find that Ferguson possessed a firearm as an adjudicated delinquent. The jury was required to find that: (1) Ferguson possessed a firearm; and (2) Ferguson was adjudicated delinquent on or after April 21, 1994, and before the date of the possession, for an act that, if committed by an adult, would constitute a felony. *See* WIS. STAT. § 941.29(2)(b). Based on the parties' stipulation that Ferguson had been adjudicated delinquent of a felony before July 15, 2017, a reasonable jury could have inferred that this element was satisfied. Based on D.F.'s testimony that an individual matching Ferguson's description was holding a gun during the shooting, and A.R.'s testimony that he saw an individual matching Ferguson's description "slowly running" while "looking as if he's holding a gun on his side," a reasonable jury could have inferred that Ferguson possessed a firearm.

¶18 Because the evidence overwhelmingly supports Ferguson's convictions, Ferguson cannot demonstrate that counsel's alleged errors altered the outcome of his trial. To prove ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "must prevail on both parts of the test to be afforded relief." *State v. Allen*, 2004 WI 106, ¶26, 274 Wis. 2d 568, 682 N.W.2d 433. We review de novo

"the legal questions of whether deficient performance has been established and whether it led to prejudice rising to a level undermining the reliability of the proceeding." *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111 (citation omitted). However, "[a] court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶19    Here, Ferguson contends that trial counsel was ineffective for failing to investigate and subsequently call L.S. as a witness and for failing to object to Officer Jegen's testimony in which Officer Jegen relayed S.T.'s physical description of the shooter to the jury. L.S.'s observation that a "tall thin" individual was also at the scene would not have undermined the evidence suggesting that the shooter was a heavyset individual. The jury knew that another individual was present at the scene based on D.F.'s testimony that a thinner individual walked past his car just before the heavier individual. Because Ferguson was charged as a party to the crime, even if the jury determined that the other individual was the shooter, the jury was still free to determine that Ferguson aided and abetted the shooter. Such a determination was also supported by the evidence, as previously discussed.

¶20    Ferguson also contends that trial counsel erred in failing to object to Officer Jegen's testimony regarding S.T.'s description of the shooter. Counsel stated at the *Machner* hearing that he did not think the trial court would have sustained his objection; however, assuming without deciding that counsel should have objected, the alleged error did not prejudice Ferguson. The supposed hearsay was simply that S.T. saw a young black man with a "heavy build" wearing a hoodie. That same information was given by two other witnesses in unchallenged testimony. Accordingly, Ferguson cannot show that but for counsel's hearsay

9

objection, the result of his trial would have been different. We conclude that Ferguson's ineffective assistance of counsel claim fails.

¶21 For the forgoing reasons, we affirm the judgment of conviction and the order denying Ferguson's postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.