STATE of Wisconsin, Plaintiff-Respondent,

v.

Donald W. THEXTON, Defendant-Appellant.†

Court of Appeals

*Nos. 2005AP3109–CR, 2005AP3110–CR. Submitted on briefs October 18, 2006.—Decided December 6, 2006.*

## 2007 WI App 11

(Also reported in 727 N.W.2d 560.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kirk B. Obear* of *Law Offices of Barry S. Cohen, S.C.* of Elkhart Lake.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. BROWN, J. In *State v. Suchocki*, 208 Wis. 2d 509, 561 N.W.2d 332 (Ct. App. 1997), the defendant challenged his sentence on the basis that the author of his presentence investigation report was married to the district attorney who had prosecuted him. We held in that case that such a relationship demonstrated bias in the PSI as a matter of law. In this case, Donald W. Thexton asks us to extend *Suchocki* to cover his situation, in which the probation agent who prepared his PSI was married to another probation agent, and the two agents together were responsible for his supervision. We decline to do so. The *Suchocki* holding was based on the conflict of interest between the prosecutor, as an agent of the state and the adversary of the defendant, and the presentence investigator, who must serve as the neutral agent of an independent judiciary. In this case, both the author of the PSI and his spouse were probation agents who had joint responsibility for supervising Thexton. There is no inherent conflict of interest in this situation. We affirm the circuit court on this issue, as well as upon the other issues Thexton raises, discussed below.

¶ 2. We will need to recite additional facts to address Thexton's other claims, but the ones relevant to the *Suchocki* issue are simple. Thexton pled guilty to second-degree sexual assault of a child in February

2005. That charge, along with another charge that was later dropped, arose from several incidents of sexual intercourse with another high school student. Thexton had previously been convicted of other sexual assault charges arising from sexual encounters with a different high school student, though the encounters giving rise to the charges in this case occurred before the ones leading to that earlier conviction.

¶ 3. On finding Thexton guilty of the present charge, the circuit court directed the Department of Corrections to prepare a PSI. At the sentencing hearing several months later, the court took testimony from the PSI's author, probation agent Dennis Streekstra, regarding Thexton's probation violations, and allowed Thexton's counsel to question Streekstra. Streekstra stated that he supervised Thexton along with "Agent Johns" on his probation from his prior conviction, and the PSI he prepared states that Johns was a source of information.[1] At the end of the hearing, the court sentenced Thexton to three years in prison followed by ten years of extended supervision. Thexton filed a postconviction motion requesting a new PSI, alleging that Streekstra and Johns are married to one another. The circuit court denied the motion and Thexton appealed.[2]

---

[1] Thexton argues that the record shows that Johns, rather than Streekstra, was responsible for his supervision. While the significance of this claim is unclear to us, we are satisfied that the record does not, in fact, support it. As far as we can tell, the record shows that Johns did supervise Thexton, but not that she did so exclusively.

[2] The circuit court noted that it had not been aware of the marriage of Streekstra and Johns and that it had received no verification that they were, in fact, married. Nevertheless, it proceeded to the merits of Thexton's argument in its decision, and we will do the same. Because his motion was denied without

¶ 4. Thexton claims that the marriage between Streekstra and Johns created a conflict of interest compromising the PSI's neutrality. We stated in *Suchocki*, 208 Wis. 2d at 518, that "[t]he integrity of the sentencing process demands that the report be accurate, reliable and above all, objective . . . . Because of the requirement that the report be objective, it is of vital importance that the author of the report be neutral and independent from either the prosecution or the defense." (Citations omitted.) In *Suchocki*, the PSI's author and the prosecuting attorney were married, and the defendant claimed that this created an improper bias in the PSI author. *Id.* The State argued that the defendant had failed to show any actual bias in either the author or the report. *Id.* at 519. We rejected this argument, noting that the relationship between the prosecutor and the agent could improperly influence the agent in ways that even the agent would not realize. *Id.* at 520. It would be difficult if not impossible for a defendant to demonstrate such influence even where it was present, and so we held that the relationship in that case demonstrated bias in both the author and the PSI as a matter of law.[3] *Id.* at 520–21.

¶ 5. We do not believe that the same inherent bias exists in the relationship between two supervising probation agents. *Suchocki* stated that it was vital for

a hearing, Thexton did not have the opportunity to prove his allegations; we will proceed under the assumption that he is correct.

[3] We nevertheless did not require a new PSI in *Suchocki* because we held that the trial court's reliance on the PSI was not prejudicial to the defendant. *State v. Suchocki*, 208 Wis. 2d 509, 521, 561 N.W.2d 332 (Ct. App. 1997). The "prejudicial reliance" standard was recently rejected in *State v. Tiepelman*, 2006 WI 66, ¶ 31, 291 Wis. 2d 179, 717 N.W.2d 1.

268

the author of the report to be independent of *either the prosecution or the defense. Id.* at 518. This independence is crucial because the prosecution and the defense are the two parties to a criminal action, and the report's author functions as an agent of the court which must deal impartially with both parties. Thexton's argument is essentially that a report's author must be independent of *other probation agents,* but this cannot be the case. The State correctly points out that the supervising probation agent often conducts the PSI.[4] If *one* supervising probation officer can be a neutral agent of the court, we can think of no reason why *two* cannot be, or why it should make any difference if the two happen to be married. The reasoning of *Suchocki* does not fit the facts of this case, and we affirm the circuit court on this point.

¶ 6.   Thexton next claims that the circuit court erred in considering the PSI from his prior conviction. On realizing that the PSI in this case had been prepared with extensive reference to the PSI from Thexton's prior conviction, Thexton's attorney objected to the circuit court that he could not adequately respond to it because he did not have access to the prior PSI. The court held a hearing on the issue, at which Thexton's attorney proposed that the court order the prior PSI released to the parties, and the court did so. The State argues that Thexton's trial counsel invited the error by specifically asking the circuit court to release the report. *See Shawn B.N. v. State,* 173 Wis. 2d 343, 372, 497

---

[4] *See* WIS. ADMIN. CODE ch. DOC 328 Appendix, Note DOC 328.27 ("In many counties the agent who prepares the report is responsible for the supervision of the client on parole or probation.").

N.W.2d 141 (Ct. App. 1992) (appellate court will not review error invited by appealing party). We agree that the issue is waived; specifically, Thexton is judicially estopped from claiming that the court erred in doing precisely what he asked. *See Rusk County Dept. of Health and Human Servs. v. Thorson*, 2005 WI App 37, ¶ 5 n.4, 278 Wis. 2d 638, 693 N.W.2d 318 ("judicial estoppel bars litigant from argument directly contradictory to circuit court argument" (citation omitted)).

¶ 7.  Thexton argues that he could not "unring the bell" because agent Streekstra had already used the old PSI in preparing the new one by the time Thexton became aware of it. He states that he did not "invite or induce" Streekstra to do so. This argument misses the point. We do not review alleged errors of probation agents, but those of circuit courts. When Thexton's counsel became aware of Streekstra's use of the prior PSI, he could have asked the court to reject it and have another prepared. Instead, he requested that the court order the PSI released to the parties prior to consideration by the court. Thexton cannot now reverse course and ask us to find fault with the trial court's action when the court did exactly as Thexton asked.

■

¶ 8.  Thexton also claims that Streekstra violated his Fifth Amendment rights when he interviewed him during the investigation. Thexton claims that Streekstra used the prior PSI as a basis for questioning him, that this tactic transformed the interview into an "accusatorial" one, and that Thexton was therefore entitled to *Miranda* warnings.[5]

¶ 9.  Thexton misunderstands the meaning of the word "accusatorial" in this context. He claims that the

[5] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

interview was accusatorial because Streekstra used a "classic interrogation technique whereby the investigator confronts the accused with prior statements." But the word "accusatorial" in this context does not relate to the style or technique of interrogation used. As our supreme court has made clear, a presentence interview is accusatorial, and as such requires *Miranda* warnings, "to the extent that it seeks statements from a defendant on an element upon which the state still has the burden of proof." *State v. Heffran*, 129 Wis. 2d 156, 165, 384 N.W.2d 351 (1986). Such was clearly not the case here, since no elements were outstanding at the time the PSI was being prepared. Thexton's Fifth Amendment claim fails.

■

¶ 10. Thexton further argues that his right to counsel was violated because he was unable to consult with his attorney regarding the use of the prior PSI during the interview. Thexton relies upon *State v. Knapp*, 111 Wis. 2d 380, 330 N.W.2d 242 (Ct. App. 1983). In that case, we rejected the argument that a defendant had the right to have an attorney present at a presentence interview. *Id.* at 381. We noted, however, that there are other safeguards for a defendant with regard to the presentence investigation, including the right to consult with counsel before a presentence interview and the right to have counsel dispute information contained in the report. *Id.* at 385. Thexton does not allege that he was prevented from consulting with counsel before the investigation. Instead, he seems to be claiming that he had a right to consult with counsel before any questions relating to his prior PSI. We disagree. The right to consultation with counsel before a presentence interview does not include a right to be apprised of all lines of questioning before the interview

occurs. The other safeguards noted in *Knapp*, including the right to dispute information in the report, adequately protect a defendant's Sixth Amendment rights, and Thexton's counsel did in fact vigorously and meticulously challenge the information and conclusions in the PSI at the sentencing hearing.

¶ 11.   Thexton finally claims that the circuit court imposed a sentence not based upon appropriate sentencing factors and that the sentence was excessive. We disagree. The primary sentencing factors which a court must consider are the gravity of the offense, the character of the defendant, and the need to protect the public. *State v. Ziegler*, 2006 WI App 49, ¶ 23, 289 Wis. 2d 594, 712 N.W.2d 76, *review denied,* 2006 WI 39, 290 Wis. 2d 22, 712 N.W.2d 897. In sentencing, the circuit court must, "by reference to the relevant facts and factors, explain how the sentence's component parts promote the sentencing objectives. By stating this linkage on the record, courts will produce sentences that can be more easily reviewed for a proper exercise of discretion." *State v. Gallion*, 2004 WI 42, ¶ 46, 270 Wis. 2d 535, 678 N.W.2d 197. Here, the court explained that it did not consider Thexton's conduct so serious that it required Thexton to be incarcerated for the length of time that might be appropriate for other sex offenders, especially in light of his relative lack of a prior record. Nevertheless, the court noted that Thexton's repeated violations of his probation conditions reflected a failure to understand that he must abide by rules, and it stated that a significant period of incarceration could help to bring that message home. The court also stated that Thexton might be in need of treatment that he could receive while incarcerated. Sentencing is not an exact science; and we are satisfied

that there is a reasonable relationship between the objectives of Thexton's sentence and its length.[6]

■

¶ 12.   As to excessiveness, Thexton notes that he was close in age to the victim. The sexual contact between the two began when he was seventeen and she fourteen and ended when he was eighteen and she fifteen. He points out that the sexual encounters between him and the victim did not involve force and argues that these facts, along with his other positive attributes, militate in favor of a shorter sentence. However, it is clear that the court considered the relative gravity of the offenses as a mitigating factor in imposing the sentence that it did, but also considered Thexton's other conduct, including that leading to his previous conviction and that which occurred while he was on probation. We note that the maximum sentence for Thexton's offense at the time it was committed was thirty years, with twenty years of prison time.[7] A sentence of thirteen years, three of them in prison, does not strike us as disproportionate to the offense here.

---

[6] Thexton also contends that Streekstra gave inaccurate testimony about one of Thexton's probation violations; we think it clear from the record that the circuit court's sentence was based upon the general pattern of violations reported before and after Thexton's stint in prison, rather than any one particular violation.

[7] The sexual contact at issue in this case occurred beginning in November 2002. At that time, second-degree sexual assault of a child was classified as a BC felony. Wis. Stat. § 948.02(2) (2001–02) (amended effective Feb. 1, 2003, 2001 Wis. Act 109, § 879). The maximum penalty for a BC felony was thirty years, Wis. Stat. § 939.50(3)(bc) (2001–02) (repealed effective Feb. 1, 2003, 2001 Wis. Act 109, § 552), twenty years of which could be prison confinement time. Wis. Stat. § 973.01(2)(b)2. (2001–02) (repealed effective Feb. 1, 2003, 2001 Wis. Act 109, § 1118).

*See State v. Daniels,* 117 Wis. 2d 9, 22, 343 N.W.2d 411 (Ct. App. 1983) ("A sentence well within the limits of the maximum sentence is not so disproportionate to the offense committed as to shock the public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.").

*By the Court.*—Judgment and order affirmed.