COURT OF APPEALS
DECISION
DATED AND FILED

July 22, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1450-CR**

Cir. Ct. No. 2020CF2800

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TOBY PIERCE, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ and ELLEN R. BROSTROM, Judges. *Affirmed*.

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Toby J. Pierce appeals a judgment, entered on his guilty plea, convicting him of a hit-and-run resulting in death.[1] Specifically, Pierce challenges the circuit court's denial of his suppression motion. We affirm.

## BACKGROUND

¶2 The State charged Pierce with hit-and-run resulting in death and knowingly operating a motor vehicle while suspended causing death. According to the criminal complaint, a car struck and killed a pedestrian, L.S., and left the scene of the accident without stopping. The next day, police went to Pierce's home. While speaking with him there, Pierce admitted that the night before he was out with a friend, probably had too much to drink, and hit a pedestrian with his car after the pedestrian "came out of nowhere." In a later interview, conducted after police provided Pierce with *Miranda* warnings, Pierce stated that he struck something with his car, but he did not know what he struck.[2]

¶3 Pierce moved to suppress the statements he made to police at his home because police failed to provide him with his *Miranda* warnings. The following relevant evidence was presented during the hearing on the motion to suppress.

---

[1] While Pierce appeals from both a judgment and an order, we address only the judgment. Pierce is not challenging the order denying his postconviction motion asking the circuit court to find him eligible for the Substance Abuse Program.

The Honorable Janet C. Protasiewicz presided over the suppression motion, accepted Pierce's plea, and sentenced him. The Honorable Ellen R. Brostrom issued the order denying his postconviction motion.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶4     Officer Sean Koscielak was the State's sole witness. Officer Koscielak testified that the day after the hit-and-run accident, he reviewed surveillance camera footage and was able to identify the car that hit L.S. Officer Koscielak and his partner Officer Braunreiter then canvassed the area and located a car with damage to its front end parked in an alley, which Officer Koscielak believed was the car that hit L.S. Dispatch informed him that the car was registered to Pierce.

¶5     That night Officer Koscielak and Officer Braunreiter, who were not in a marked squad car, knocked on Pierce's door. In addition to knocking on the door, Officer Koscielak stated that Officer Braunreiter may have shined his flashlight into Pierce's second-floor window. Officer Koscielak testified that he was dressed in plain clothes and had a gun in a holster at his hip and Officer Braunreiter was similarly dressed.

¶6     After a minute, Pierce answered the door, the officers identified themselves as police officers, and they asked Pierce "something to the effect of do you know why we're here." Pierce responded "about my vehicle out back." The officers responded affirmatively. Officer Koscielak testified that Pierce "turned around, walked upstairs[,] and invited us inside." The officers followed Pierce to the second floor of the house, and they spoke further with him while his girlfriend was also present.

¶7     Officer Koscielak asked Pierce what happened to his car, and Pierce admitted that while he was driving with a friend, a pedestrian "came out of nowhere." Pierce hit the pedestrian and kept driving. Pierce also stated that he probably had a little too much to drink when he hit the pedestrian. Based on his statements, the officers arrested Pierce. Officer Koscielak said the entire

conversation took about ten minutes. At no point during their interaction with Pierce at his home did the officers give him *Miranda* warnings. The officers did not draw their weapons, threaten Pierce, accuse him of anything, or raise their voices.

¶8 Pierce testified next. He said that he was asleep when his girlfriend saw flashing lights outside the window. Pierce then heard knocking at his door, went downstairs in shorts and a t-shirt, and opened the door. When he opened the door, he saw two police officers standing at the doorway with badges around their necks and guns in their holsters. The officers asked him if he was "Toby," he stated "yes," and they asked if he knew why they were there and he responded affirmatively. Pierce testified that the officers asked if they could talk to him, and he said yes, inviting them in. They all went upstairs. Pierce's girlfriend was present, but she did not say anything. Pierce asked the officers how they got his name and address, and they told him a video captured his license plate. The officers asked him what happened, and Pierce told them he had been in an accident.

¶9 Pierce said he did not tell the officers he had struck someone or say he had been drinking. Pierce acknowledged that he told the police that he drove home after the accident. The officers had Pierce get dressed and said he needed to go with them. They did not handcuff Pierce or draw their weapons, they spoke in a normal tone of voice, and they did not badger or threaten him. He said the conversation took "maybe 20 minutes." Pierce said he felt he was not free to leave and did not ask the officers to leave because they were steadily asking him questions.

4

¶10 After listening to the testimony, the circuit court found that Pierce invited the officers inside and "a short period of questioning" took place with Pierce's girlfriend present. The court found that the questioning "was very brief in nature," that Pierce's girlfriend was present, and he was not handcuffed. In reference to Pierce, the court concluded: "Doesn't sound like you were coerced in any way, doesn't sound like you were scared. Sounds like you actually knew it was just a matter of time before they'd be coming to your door." The court found that Pierce "absolutely" was not in custody and that it was not "a close call." Accordingly, the court denied Pierce's suppression motion.

¶11 Pierce subsequently pled guilty to hit-and-run resulting in death. The circuit court sentenced him to 10 years of initial confinement and 10 years of extended supervision.

## DISCUSSION

¶12 Pierce appeals the denial of his suppression motion. *See* WIS. STAT. § 971.31(10) (2023-24) (permitting appellate review of an order denying a motion to suppress evidence, notwithstanding the defendant's guilty or no-contest plea).[3] "The review of a circuit court's order granting or denying a suppression motion presents a question of constitutional fact. We will uphold the court's factual findings unless they are clearly erroneous, but we independently apply constitutional principles to those facts." *State v. Coffee*, 2019 WI App 25, ¶6, 387 Wis. 2d 673, 929 N.W.2d 245 (citations omitted).

---

[3] All references to the Wisconsin Statutes are to the 2023-24 version.

¶13    Both the Fifth Amendment of the United States Constitution and article I, section 8 of the Wisconsin Constitution provide that no person shall be compelled to incriminate themselves without the due process of law. *See **State v. Bartelt***, 2018 WI 16, ¶26, 379 Wis. 2d 588, 906 N.W.2d 684. The constitutional right against self-incrimination requires that law enforcement officers inform suspects of their rights to remain silent and to have an attorney present during custodial interrogations. ***Miranda v. Arizona***, 384 U.S. 436, 444 (1966). Because "***Miranda*** and its progeny are aimed at dispelling the compulsion inherent in custodial surroundings … the ***Miranda*** safeguards apply only to custodial interrogations under both constitutions." ***Bartelt***, 379 Wis. 2d 588, ¶30 (citation and quotation marks omitted). When a person is subjected to a custodial interrogation, "[i]f the warnings are not given, any statements made are inadmissible in court." ***State v. Halverson***, 2021 WI 7, ¶1, 395 Wis. 2d 385, 953 N.W.2d 847.

¶14    Pierce contends that he was in custody at his doorstep, as soon as one of the officers asked him if he knew why the officers were there. Pierce argues that this was an "accusatory question" and that the police manifested their belief that he was a suspect. To support his position, he relies on the following:

> [A]n officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave.

***State v. Mosher***, 221 Wis. 2d 203, 216-17, 584 N.W.2d 553 (Ct. App. 1998) (emphasis omitted; citation omitted).

¶15 According to Pierce, the purpose of the question was to obtain an answer from him about the hit-and-run and the damage police observed to his car—information relevant to the elements of a hit-and-run offense. *See State v. Thexton*, 2007 WI App 11, ¶9, 298 Wis. 2d 263, 727 N.W.2d 560 ("[A] presentence interview is accusatorial, and as such requires **Miranda** warnings, 'to the extent that it seeks statements from a defendant on an element upon which the [S]tate still has the burden of proof'"). He claims that when analyzed in conjunction with "the urgency police displayed," a reasonable person would not have felt free to end the interaction with the officers.

¶16 Our state supreme court provided an in-depth explanation of what it means to be in custody:

> The test to determine whether a person is in custody under *Miranda* is an objective test. The inquiry is "whether there is a formal arrest or restraint on freedom of movement of a degree associated with a formal arrest." Looking at the totality of the circumstances, courts will consider whether "a reasonable person would not feel free to terminate the interview and leave the scene."
>
> We consider a variety of factors to determine whether under the totality of the circumstances a reasonable person would feel at liberty to terminate an interview and leave. Such factors include: the degree of restraint; the purpose, place, and length of the interrogation; and what has been communicated by police officers. "When considering the degree of restraint, we consider: whether the suspect is handcuffed, whether a weapon is drawn, whether a frisk is performed, the manner in which the suspect is restrained, whether the suspect is moved to another location, whether questioning took place in a police vehicle, and the number of officers involved."
>
> If we determine that a suspect's freedom of movement is curtailed such that a reasonable person would not feel free to leave, we must then consider whether "the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." In other words, we must consider whether the

> specific circumstances presented a serious danger of coercion, because the "freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody." Importantly, a noncustodial situation is not converted to one in which *Miranda* applies simply because the environment in which the questioning took place was coercive. "Any interview of one suspected of a crime by a police officer will have coercive aspects to it ... [b]ut police officers are not required to administer *Miranda* warnings to everyone whom they question." Therefore, "*Miranda* warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'" And finally, "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."

*Bartelt*, 379 Wis. 2d 588, ¶¶31-33 (footnote omitted; citations omitted).

¶17     Here, under the totality of the circumstances, Pierce was not in custody when the police officers arrived at his home and immediately asked if he knew why they were there. He was not under arrest, handcuffed, or otherwise physically restrained in his freedom of movement to a degree associated with a formal arrest. No weapons were drawn, no commands given, no actions that could be considered a show of force other than the police officers having guns in their holsters. The police officers spoke to Pierce in his residence at Pierce's invitation, with his girlfriend present, for somewhere between 10 and 20 minutes. *See id.*, ¶38 (holding that a 30 or 35 minute interview length indicates a lack of custody). Pierce acknowledged that the officers did not raise their voices, threaten, or badger him.

¶18     We disagree with Pierce's contention that the initial question by police was accusatory. Asking a person if he knows why police are present does not seek a statement about an element of a crime. As summed up by the State, "an answer of either 'yes' or 'no' would not be a statement about an element of a

8

crime and would not imply guilt."[4]    Moreover, we are unpersuaded by the "urgency" that Pierce references, which consists of police officers arriving at his home at night, while he was sleeping, shining flashlights through his windows, and knocking on his door.  The urgency he references is not supported by the circuit court's findings.

¶19    Because we conclude no ***Miranda*** violation occurred, Pierce's contention that his statements should have been suppressed fails.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] The State goes on to note that if this was enough for custody, police would seemingly be prohibited from conducting a "knock and talk," or asking any questions of a potential suspect without ***Miranda*** warnings.